**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **INTERCOMMUNITY JUSTICE AND** | ) | |
| **PEACE CENTER, Erlin Lorena** | ) | |
| **RODRIGUEZ ENAMORADO,** | ) | No_____ |
| **individually and as next friend of J.G.R.,** | ) | |
| **Maria MONJARAZ, individually and as next** | ) | |
| **friend of A.M., on behalf of** | ) | |
| **themselves and all others similarly situated,** | ) | |
| | ) | **COMPLAINT FOR** |
| | ) | **DECLARATORY AND** |
| | ) | **INJUNCTIVE RELIEF** |
| Plaintiffs, | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| | ) | **CLASS ACTION** |
| **Don Petit, Registrar, Ohio Bureau of Motor** | ) | |
| **Vehicles, in his official capacity,** | ) | |
| | ) | |
| | ) | **DEMAND FOR JURY** |
| Defendant. | ) | **TRIAL** |

**COMPLAINT FOR CLASSWIDE DECLARATORY AND INJUNCTIVE RELIEF**

## I.     INTRODUCTION

1.     This is an action to enforce the rights of 16- and 17-year-old minors who are eligible to receive Ohio driver's licenses or identification cards—either because they are U.S. citizens, or non-citizens who are eligible to receive driver's licenses—but are prevented from doing so because their parents lack lawful immigration status.  These non-citizen minors, and U.S.-citizen minor children of non-citizens, are authorized to work and reside in the United States and entitled under Ohio law to obtain driver's licenses or state identification cards.  However, the Bureau of Motor Vehicles ("BMV") has enacted a discriminatory policy that requires a parent or guardian to prove lawful immigration status in order to co-sign for the

1

minor child if the parent was born outside the United States. Where a parent cannot provide such documentation, BMV policy prohibits any other adult from serving as a co-signer unless he or she obtains custody or legal guardianship of the minor applicant. This policy effectively denies or delays the issuance of driver's licenses and identification cards to otherwise-eligible individuals.

2.     Because they are unable to procure driver's licenses or identification cards in a timely fashion, thus hindering their ability to travel to their places of school and employment, transport other family members, provide identification for purposes of opening a bank account or obtaining employment, and otherwise participate fully in civic life, Plaintiffs and putative class members seek injunctive and declaratory relief against the policy.

## II.     JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights), and 42 U.S.C. § 1983. Because this lawsuit alleges violations of the United States Constitution, it raises questions of federal law.

4.     This Court has the authority to grant injunctive relief, declaratory relief, and other related relief pursuant to 28 U.S.C. § 1331 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

5.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant Don Petit, who is sued in his official capacity, operates in this district and division. Additionally, Plaintiffs Erlin Rodriguez Enamorado and J.G.R. reside in this district and division, and a substantial part of the acts or omissions giving rise to the events occurred herein.

### III.    PARTIES

<u>Plaintiffs</u>

6.      Intercommunity Justice and Peace Center ("IJPC") is a non-profit organization with headquarters in Cincinnati, Ohio. Its executive director is Allison Reynolds-Berry. IJPC is devoted to counteracting discrimination against and exploitation of immigrants and to promoting opportunities for immigrant integration into U.S. society.

7.      In furtherance of its mission, Plaintiff IJPC engages in a variety of educational activities in the Greater Cincinnati area to educate the general public, focusing in particular on people of faith, youth, and young adults, about the realities of immigration and to work towards a more immigrant-friendly society. IJPC conducts presentation and programming to empower immigrants to learn their rights regarding immigration enforcement, detention, deportation, Deferred Action for Childhood Arrivals ("DACA") eligibility, and other areas.

8.      In connection with its core advocacy area of immigrant rights, IJPC operates the Youth Educating Society ("YES") program. YES has approximately fifty active members and an advisory board, and the program holds monthly membership meetings. YES empowers young immigrants, children of immigrants, and their allies, and promotes leadership development in its members.

9.      Plaintiff IJPC has members who are U.S.-citizen 16- and 17-year-old children of immigrants who lack lawful immigration status.  Plaintiff IJPC also has 16- and 17-year-old members who are DACA recipients but whose parents lack lawful immigration status.

10.     Plaintiff IJPC has had to divert resources to assist affected individuals who have applied for driver's licenses in Ohio. In 2016, IJPC first began to hear from members that

they were being denied driver's licenses because of their parents' inability to serve as co-signers.

11.     Plaintiff J.G.R. is a seventeen-year-old young woman and citizen of Honduras. She lives in Columbus, Ohio. She has been a resident of Ohio since August 2015. J.G.R. is a "legally present" individual for purposes of driver's license or identification card eligibility in Ohio because she possesses a valid Employment Authorization Document ("EAD") based on her pending application for adjustment of status, Form I-485. *See* Exhibit 1, Ohio BMV USCIS Informational Manual, p. 6. J.G.R. applied twice for an Ohio identification card at the East Broad Street Deputy Registrar location in Columbus, Ohio. She brought her mother, Plaintiff Erlin Lorena Rodriguez Enamorado, to co-sign for her the first time, in 2017. The Deputy Registrar denied J.G.R.'s application, stating that Ms. Rodriguez Enamorado was unable to serve as J.G.R.'s co-signer because Ms. Rodriguez Enamorado did not have a valid Ohio ID as required by BMV policy. Ms. Rodriguez Enamorado presented a valid Honduran passport as proof of identification. J.G.R. then returned to the same Deputy Registrar with a friend of the family, Jorge Pagon, who was willing to serve as her co-signer and was in possession of a valid Ohio ID. The Deputy Registrar again denied J.G.R.'s application for a state identification card because Mr. Pagon was neither her parent or legal guardian, and thus could not serve as her co-signer under BMV policy.

12.     Erlin Lorena Rodriguez Enamorado resides in Columbus, Ohio. She is the mother of seventeen-year-old J.G.R. Ms. Rodriguez Enamorado accompanied her daughter to apply for an Ohio identification card at the East Broad Street BMV Deputy Registrar in Columbus, Ohio in 2017. The Deputy Registrar refused to issue J.G.R. an Ohio identification card because Ms. Rodriguez Enamorado did not have a photo ID from Ohio (a valid photo ID

from Ohio cannot be obtained by someone without lawful presence in the United States). Ms. Rodriguez Enamorado was told that she could not serve as J.G.R.'s co-signer, and that J.G.R. would not be able to get an identification card unless Ms. Rodriguez Enamorado allowed another adult with a valid photo ID to obtain guardianship or custody of her daughter.

13.     A.M. is a U.S. citizen and resident of Toledo, Ohio. He is seventeen years old. On or around February 2017, when he was sixteen years old, A.M. applied for an Ohio driver's license at the BMV Deputy Registrar in Oregon, Ohio. His mother, Maria Monjaraz, accompanied him to serve as his co-signer. Ms. Monjaraz brought her valid Mexican consular identification card, which contains a photograph. The Deputy Registrar denied A.M. a driver's license pursuant to BMV policy because his mother did not have a valid U.S. ID or other proof of immigration status.

14.     Maria Monjaraz is a citizen of Mexico. She lives in Toledo, Ohio. She is the mother and sole custodial parent of her son, A.M. Ms. Monjaraz accompanied her son to the Oregon, Ohio Deputy Registrar's office to serve as his co-signer in his application for a driver's license. She brought a valid Mexican consular identification card as proof of identity. The Deputy Registrar denied A.M.'s application for a driver's license. The Deputy Registrar stated the reason for the denial was that Ms. Monjaraz was unable to present a valid U.S. ID as required by BMV policy. Thus, BMV policy forbade Ms. Monjaraz from co-signing for her son on his driver's license application.

Defendant

15.     Defendant Don Petit is the registrar of the Ohio Bureau of Motor Vehicles and is sued in his official capacity only.  He is responsible for the policies, practices, and customs of the Bureau of Motor Vehicles.  At all relevant times he was acting under color of state law.

## IV.    LEGAL FRAMEWORK

<u>Federal Law Governing Immigration Classification and Issuance of Driver's Licenses to
Non-Citizens</u>

16.    The federal government has exclusive power to determine and regulate the
immigration status of non-citizens in the United States.  The U.S. Constitution grants the
federal government the power to "establish a uniform Rule of Naturalization," U.S. Const.
art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl.
3.

17.    Congress has created a comprehensive system of federal laws regulating immigration
and enforcing immigration law through the Immigration and Nationality Act ("INA").  *See* 8
U.S.C. §§ 1101 *et seq.*  The INA contains complex and exclusive procedures for determining
immigration and citizenship status.  The federal government has established specialized
agencies and courts to determine the immigration status of individuals, to enforce
immigration law, and to effectuate immigration policy.  *See* 8 U.S.C. §§ 1101(b)(4), 1229a,
1551 *et seq.* (2016); 8 C.F.R. §§ 2.1, 1003.1 *et seq.* (2016).

18.    With the federal REAL ID Act, Congress set standards for the issuance of state
driver's licenses and identification cards that federal agencies will accept for official
purposes, such as accessing federal facilities and boarding federally regulated aircraft.  Pub.
L. No. 109-13, § 201(3), 119 Stat. 231, 313 (codified at 49 U.S.C. § 30301 note).

19.    The REAL ID Act provides that the Secretary of Homeland Security shall determine
whether a state is meeting the requirements of the REAL ID Act based on certifications made
by the state to the Secretary of Homeland Security.  Pub. L. No. 109-13, § 202(a)(2). A state
may receive federal grant money to assist it in complying with the Act. *Id.* § 204(a).

6

20.     Ohio, along with at least 24 other states and the District of Columbia, has agreed to comply with REAL ID, thereby ensuring that its residents may use their Ohio driver's licenses to enter federal facilities and board commercial domestic flights.[1]  Many other states have received extensions on the deadline to become compliant with REAL ID.

21.     To issue a REAL ID-compliant driver's license to an applicant, a state must require documentary evidence that the applicant has "lawful status," as defined by the REAL ID Act. *Id.* § 202(c)(2)(B).

22.     The REAL ID Act establishes nine categories of persons who have "lawful status," as required to receive a REAL ID-compliant driver's license: (1) citizens or nationals of the United States; (2) aliens lawfully admitted for permanent or temporary residence in the United States; (3) aliens with conditional permanent resident status in the United States; (4) aliens who have an approved application for asylum in the United States or who entered into the United States in refugee status; (5) aliens with a valid, unexpired nonimmigrant visa or nonimmigrant visa status for entry into the United States; (6) aliens with a pending application for asylum in the United States; (7) aliens with a pending or approved application for temporary protected status in the United States; (8) aliens with approved deferred action status; and (9) aliens with a pending application for adjustment of status to that of an alien lawfully admitted for permanent residence in the United States or conditional permanent resident status in the United States. Pub. L. No. 109-13, § 202(c)(2)(B), 119 Stat. 231, 313 (codified at 49 U.S.C. § 30301 note); 6 C.F.R. § 37.3 (2016).

---

[1] *See* https://www.dhs.gov/real-id/ohio [last visited October 4, 2018].

23.     To be eligible for a REAL ID-compliant driver's license, a person must present documents demonstrating identity and lawful status in the United States, as determined by U.S. Citizenship and Immigration Services ("USCIS"). Pub. L. No. 109-13, § 202(c).

### Deferred Action for Childhood Arrivals

24.     On June 15, 2012, the Secretary of the United States Department of Homeland Security ("DHS") announced the Deferred Action for Childhood Arrivals program of immigration relief for immigrants who came to the United States as children and are present in the country without a lawful immigration status.  The DACA program was established to allow these young immigrants to remain in the United States without fear of deportation for a specified, renewable period.  After a showing that they satisfy certain criteria, individuals in the DACA program may receive a two-year grant of deferred action, subject to renewal.

25.     Recipients of deferred action are eligible to receive employment authorization under federal law upon a showing of economic necessity.  *See* 8 C.F.R. § 274a.12(c)(14).

26.     The Secretary of Homeland Security has the authority to grant deferred action to otherwise removable non-citizens under her statutory authority over "administration and enforcement" of the INA, including the power to "perform such . . . acts as [she] e deems necessary for carrying out [her] authority."  8 U.S.C. §§ 1103(a)(1), 1103(a)(3).  That discretion granted by Congress includes the discretion to "decide whether it makes sense to pursue removal at all." *Arizona v. United States*, 132 S. Ct. 2492, 2499 (2012).

27.     Historically, the federal government has used deferred action to authorize numerous group of immigrants to live and work in the United States for a temporary period, including victims of human trafficking, family members of lawful permanent resident members of the armed forces, or foreign students affected by Hurricane Katrina.  Federal immigration

authorities also routinely grant deferred action on an individual basis, including, for example, to a person whose continued presence is desired by law enforcement for an ongoing investigation.

28.     Non-citizens are eligible for DACA if they: a) were under the age of 31 as of June 15, 2012; b) came to the United States before their 16th birthday; c) have continuously resided in the United States since June 15, 2007, up to the present time; d) were physically present in the United States on June 15, 2012, and at the time of making the request for consideration of deferred action with USCIS; e) entered without inspection before June 15, 2012, or had an expired lawful immigration status as of June 15, 2012; f) are currently in school, have graduated or obtained a certificate of completion from high school, have obtained a GED certificate, or are an honorably discharged veteran of the Coast Guard or Armed Forces of the United States; and g) have not been convicted of a felony, a significant misdemeanor, or three or more other misdemeanors, and do not otherwise pose a threat to national security or public safety.[2]

29.     DACA recipients routinely receive work authorization for the two-year period of their deferred action.  The Employment Authorization Document for DACA recipients is coded (c)(33).[3]

30.     DACA recipients are lawfully present during the deferred action period.  USCIS has stated that under the DACA program, "[i]f your case is deferred, you will not accrue unlawful presence during the period of deferred action."[4]

---

[2] USCIS, Consideration of Deferred Action for Childhood Arrivals Process (Sept. 14, 2012), available at: https://www.uscis.gov/humanitarian/consideration-deferred-action-childhood-arrivals-daca.
[3] See Instructions for Form I-765 8F, available a:t https://www.uscis.gov/sites/default/files/files/form/i-765instr.pdf.
[4] USCIS, Consideration of Deferred Action for Childhood Arrivals Process, Frequently Asked Questions, at Q5, available at: https://www.uscis.gov/humanitarian/consideration-deferred-action-childhood-arrivals-process/frequently-asked-questions.

31. Because DACA recipients have a grant of deferred action, they are included in the eighth category of non-citizens who have "lawful status," as required to receive a REAL ID-compliant driver's license (aliens with approved deferred action status).

32. Although the Trump administration announced in September 2017 that it would phase out the DACA program by not accepting new initial applications immediately or renewal applications after October 5, 2017, several federal district courts have since enjoined the termination of the policy. No federal court of appeals has yet adjudicated the issue. Accordingly, USCIS is continuing to accept renewal applications and granting additional two-year periods of deferred action to eligible individuals who apply for DACA renewal. Additionally, one federal district court has enjoined USCIS from refusing to accept initial DACA applications; the court subsequently stayed the implementation of its decision pending additional briefing; therefore, USCIS is not currently accepting initial DACA applications but may do so in the future.

*Special Immigrant Juvenile Status*

33. Certain unmarried noncitizens who are under 21 years of age and are present in the United States may obtain "special immigrant juvenile status" if they meet the following criteria: (a) a juvenile court has declared them a dependent of the state and found that reunification with at least one of their parents is not viable due to abuse, neglect or abandonment; and (b) a juvenile court has declared that it is not in their best interests to be returned to their country of nationality or last habitual residence. INA § 101(a)(27)(J).

34. Noncitizens with special immigrant juvenile status are eligible to adjust their status to lawful permanent residence under INA § 245(a). An applicant for adjustment of status is

eligible to receive an employment authorization document and is eligible for a driver's license under the REAL ID Act and BMV policy.

<u>Ohio Law and Policy Governing Issuance of Licenses to Non-Citizens</u>

35. The Ohio Revised Code establishes the legal requirements for the issuance of driver's licenses to Ohio residents. *See* Ohio Rev. Code § 4507.

36. A driver's license issued to a resident of Ohio over the age of twenty-one expires on the birthday of the applicant in the fourth year after the date it is issued, unless the applicant is a temporary resident. Ohio Rev. Code § 4507.09(A).

37. Ohio requires a driver's license applicant to be eighteen years of age or older, except that a person who is at least sixteen years of age and has held a temporary instruction permit for a period of at least six months may apply for and receive a probationary license. Ohio Rev. Code § 4507.071(A). An individual may receive a temporary instruction permit no earlier than age fifteen and one-half years. *Id.* § 4507.05(A)(1).

38. Ohio law provides that for a minor under eighteen years of age to receive a probationary license, the minor's application must be "signed by one of the minor's parents, the minor's guardian, another person having custody of the applicant, or, if there is no parent or guardian, a responsible person who is willing to assume the obligation imposed under this section." Ohio Rev. Code § 4507.07(A). The co-signer "shall present identification establishing that the adult is the individual whose signature appears on the application." The Revised Code further provides that "the [BMV] registrar shall prescribe, by rule, the types of identification that are suitable for" this purpose. *Id.*

39. An applicant for an Ohio driver's license or identification card who is not an Ohio resident is only eligible for a nonrenewable driver's license or nonrenewable identification

card. OAC § 4501:1-1-35(A); *see also* Ohio Rev. Code § 4507.09(A). A "resident" of Ohio is defined as "a person who is a native-born or naturalized citizen of the United States or a person who presents credible evidence from the United States Citizenship and Immigration Services (USCIS) that the person is a permanent resident of the United States; and 1) The person currently either lives in Ohio; or 2) The person has left Ohio, for temporary purposes only, with a specific intention to return to Ohio to live." OAC § 4501:1-1-35(C).

40.     Ohio driver's license applicants who are not permanent residents or U.S. citizens are only eligible for a "nonrenewable license." A nonrenewable license "shall not extend beyond the duration of an applicant's temporary residence in this state, and shall expire on the same date listed on the applicant's legal presence documentation, or on the same date in the fourth year after the date in the nonrenewable license is issued, whichever comes first." OAC § 4501:1-1-37(A)(1). Applicants must establish "legal presence" in the United States by submitting the appropriate legal documents issued by USCIS to establish the individual "has taken the necessary steps to ensure they have a recognizable legal status within the United States." OAC § 4501:1-1-37(A)(4). Applicants must submit "original and valid" USCIS documents showing the dates of "legal presence." OAC § 4501:1-1-21(G)(6).

41.     Where a co-signer is "a citizen of another country," he or she is required to provide "all USCIS documents" to establish "legal presence in the United States."  Exhibit 2, Ohio BMV Driver Manual, Chapter 3, p. 4.  The Driver Manual provides that "[i]f the co-signer provides a driver license or ID from any other state, they are required to provide a secondary document with proof of SSN.  If the co-signer is a citizen of another County, they must provide all USCIS documents."  *Id.* at Chapter 3, p. 4.

42. Ohio Revised Code §§ 4507.50 and 4507.51 govern the issuance of state identification cards. A state identification card is not valid for the purpose of operating a motor vehicle. *Id.* at § 4507.52. There is no age requirement to obtain a state identification card. However, the Revised Code requires that the application for an identification card "be signed by the applicant, and by the applicant's parent or guardian if the applicant is under eighteen years of age." Ohio Rev. Code § 4507.51.

43. Although the BMV policy regarding required USCIS documents for non-citizen co-signers is laid out only in the Drivers Manual, in a letter to Plaintiffs' counsel dated October 2, 2017, Defendant stated: "the BMV applies the same identification requirements to Ohio driver's licenses, commercial driver's licenses, temporary instruction permits, and state identification (ID) cards...." Exhibit 3. Therefore, the BMV co-signer policy applies to minors who apply for state identification cards in addition to those who apply for driver's licenses.

## V. FACTUAL ALLEGATIONS

### A. Bureau of Motor Vehicles Structure

44. The Bureau of Motor Vehicles is a state agency under the Ohio Department of Public Safety.

45. The BMV has signed contracts with more than 400 Deputy Registrars, which provide services throughout Ohio's 88 counties, including issuing driver's licenses and state identification cards. *See* Ohio Rev. Code § 4507.01(B).

46. When Deputy Registrars issue or decline to issue driver's licenses or state identification cards to individual customers, they are acting as state actors.

47. Deputy Registrars are required to follow Ohio law and BMV policy and guidance.

13

48.     The relationship between the BMV and its Deputy Registrars is contractual in nature; the BMV provides monetary compensation to Deputy Registrars in exchange for the services they are contracted to provide.

**B.      Bureau of Motor Vehicles Policies and their Enforcement**

49.     On March 19, 2013, Ohio Attorney General Michael DeWine responded to an inquiry from the Latino Affairs Commission regarding driver's licenses for DACA recipients.  *See* Exhibit 4, March 19, 2013 Letter from Attorney General DeWine.  Attorney General DeWine stated that "[i]t appears that the BMV would have to accept driver's license applications from individuals that fall under the Deferred Action for Childhood Arrivals initiative because they can provide all of the information necessary" to receive a driver's license.

50.     On March 29, 2013, the BMV announced that it would begin to issue driver's licenses to DACA recipients.  In a press release, the BMV stated that it would issue the temporary licenses "only after first confirming applicants' immigration documents via the U.S. Citizen and Immigration Services (USCIS) database."  Exhibit 5, March 29, 2013 BMV Press Release.

51.     J.G.R. is the beneficiary of an approved petition for Special Immigrant Juvenile Status, Form I-360. As such, she is eligible to adjust her status to lawful permanent residence. J.G.R. holds a valid Employment Authorization Document ("EAD") based on her pending adjustment of status application (Form I-485).

52.     J.G.R. possesses the requisite "legal presence" to be eligible for an Ohio driver's license or state identification card.

53.     Sometime in the fall or early winter of 2017, when J.G.R. was sixteen years old, J.G.R. applied for a state identification card at the BMV Deputy Registrar on East Broad

Street in Columbus, Ohio. J.G.R. brought with her an Employment Authorization Document, birth certificate, and Social Security card.

54.     J.G.R. was accompanied by her mother, Erlin Lorena Rodriguez Enamorado, who intended to serve as J.G.R.'s co-signer as required under Ohio Revised Code § 4507.07. Ms. Rodriguez Enamorado is J.G.R.'s only residential parent. The exact whereabouts of J.G.R.'s father are unknown and he does not have valid immigration status in the United States.

55.     Deputy Registrar staff did not look at the documents J.G.R. brought with her; instead, staff asked Ms. Rodriguez Enamorado for her identification, and she presented a valid Honduran passport to the Deputy Registrar's office. Because of her immigration status, Ms. Rodriguez Enamorado is not eligible for an Ohio driver's license or state identification card, nor is she eligible for an identity document from the U.S. federal government.

56.     The East Broad Street BMV Deputy Registrar denied J.G.R.'s application for an Ohio state identification card because Ms. Rodriguez Enamorado could not serve as J.G.R.'s co-signer. The Deputy Registrar refused to allow Ms. Rodriguez Enamorado to serve as J.G.R.'s co-signer because she did not have a valid Ohio ID. BMV policy prohibits a parent who is a "citizen of another country" from serving as a co-signer for her child if she cannot "provide all USCIS documents," or evidence of immigration status. *See* Exhibit 2, Ohio BMV Driver Manual, Chapter 3, p. 4. J.G.R. was therefore denied an Ohio identification card.

57.     One week later, J.G.R. returned to the same BMV Deputy Registrar location with Jorge Pagon, a family friend who was able to present an Ohio-issued photo ID and proof of lawful immigration status.

58.     The East Broad Street BMV Deputy Registrar refused to issue J.G.R. a state identification card, stating that BMV policy prohibited Mr. Pagon from serving as J.G.R.'s

co-signer because he was not her parent or legal guardian.  Because the BMV would not permit her mother or Mr. Pagon to co-sign for J.G.R.'s state identification card, BMV policy would similarly prevent J.G.R. from obtaining a driver's license.

59.     A.M. is a U.S. citizen and resident of Toledo, Ohio. He is seventeen years old. He lives with his mother, Maria Monjaraz. The whereabouts of A.M.'s father are unknown.

60.     Maria Monjaraz is a citizen of Mexico. She lives in Toledo, Ohio. She is the mother and sole custodian of A.M.

61.     On or around February 2017, A.M. applied for an Ohio driver's license at the BMV Deputy Registrar at 3018 Navarre Avenue in Oregon, Ohio. He was sixteen years old at the time.  Because A.M. is a minor, A.M.'s mother, Ms. Monjaraz, accompanied him to serve as his co-signer.

62.     Ms. Monjaraz presented a valid Mexican consular identification card to the Ohio BMV Deputy Registrar staff as proof of her identity.

63.     A.M. presented papers verifying his address and identity to the BMV Deputy Registrar staff.

64.     BMV Deputy Registrar Staff denied A.M.'s application for a driver's license. Deputy Registrar staff stated that in order to be eligible for a driver's license or state ID, A.M.'s parent or legal guardian would need to present proof of lawful immigration status in the form of a "valid US ID." Since Ms. Monjaraz's only form of identification was her Mexican consular identification card, the BMV Deputy Registrar staff denied A.M.'s driver's license application, citing BMV policy as their reason.

65.     BMV policy prohibits a parent who is a "citizen of another country" from serving as a

co-signer for her child if she cannot "provide all USCIS documents," or evidence of

immigration status. *See* Exhibit 2, Ohio BMV Driver Manual, Chapter 3, p. 4.

66.     Ms. Monjaraz is unable to obtain the required USCIS documents or a valid Ohio

driver's license or state ID because of her immigration status. The only government-issued

photo identification she is able to obtain are a Mexican passport and a Mexican consular

identification card.

67.     The Intercommunity Justice and Peace Center is an education and advocacy

organization in Cincinnati, Ohio.

68.     IJPC primarily organizes around four core issues, one of which is immigrant rights,

including the need for immigration reform. As part of this mission, IJPC hosts the YES

program, which promotes leadership development and advocacy in young immigrants,

children of immigrants, and their allies. The YES program has approximately fifty members.

IJPC teaches YES members effective storytelling tools, fosters leadership development, and

provides fora for them to speak and advocate for immigrants' rights.

69.     IJPC employs full and part-time staff who support its general operation. IJPC

employs one full-time staff member to oversee its immigration advocacy work. It employs

one part-time staff member to run the YES program.

70.     In addition to operating the YES program, IJPC also creates educational resources

and provides educational presentations to community members—both immigrants and

nonimmigrants—on a variety of immigration issues. IJPC also facilitates the Immigrant

Dignity Coalition, a consortium of 38 nonprofit organizations in the greater Cincinnati area.

71.     IJPC staff have had to spend resources advocating for their documented YES members' right to a driver's license or state identification cards with the BMV. They have spent many hours driving members to and from YES Program activities because these members—who are otherwise eligible for driver's licenses—were unable to obtain a driver's license since their parents could not serve as co-signers under BMV policy.

72.     IJPC staff has diverted significant staff hours and additional financial resources because of the detrimental effects of this BMV policy on their membership. IJPC staff who would not normally work specifically with the YES Program have also had to devote resources to assist members who are denied driver's licenses because of the BMV co-signer policy.

73.     If IJPC did not have to divert significant resources to address the BMV policy's effect on its members, it would be able to devote those resources to its core mission of educating the community and promoting immigrant rights and immigration reform.

74.     The BMV co-signer policy frustrates IJPC's mission to educate communities about immigration and immigrants' rights and to advocate against discrimination and exploitation of immigrants. Further, otherwise-eligible YES members face barriers to conducting these education efforts because they are unable to get a driver's license or state identification card under BMV co-signer policy.

**C.     Defendant's Policy Harms Plaintiffs**

75.     The ability to drive is, in most parts of the United States, including Ohio, a necessity of modern life.  Non-citizens live in urban, suburban, and rural areas of Ohio.  Even in cities, few Ohio residents are able to commute to work by public transportation, and in suburban and rural areas of the state public transportation is virtually non-existent.

18

76.     For many low-income immigrants, an Ohio driver's license or state identification card is the only form of photo identification available to them. Many low-income immigrants do not have the financial resources or access to transportation to travel to the nearest embassy or consulate to apply for a passport. State-issued photo identification is a requirement to apply for work, open a bank account, attend higher education, obtain public benefits, and access many other fundamental human rights.

77.     For instance, the Form I-9 must be completed by an employer in order to confirm that an employee is legally authorized to work.  Employees must produce certain identity documents, including at least one photo ID, in order for the Form I-9 to be filled out successfully.  Therefore, lack of access to a driver's license or state identification card can adversely affect the ability of an immigrant or the child of an immigrant to gain employment and support herself or her family.

78.     Many studies have found that low-income workers without cars face significant obstacles in obtaining transportation to places of employment and for other necessities.  The Leadership Conference Education Fund found that as jobs are increasingly located farther away from urban centers, workers without cars struggle to find reliable public transportation to commute to work.[5]  Public transportation is clustered in city centers, but only about 22% of people in the country's largest metropolitan areas (including many Ohio cities) work within three miles of city centers.

---

[5] http://civilrightsdocs.info/pdf/docs/transportation/getting-to-work-july20.pdf

79.     A Brookings Institution Report found that among the 96 largest metropolitan statistical areas in the United States, the Cleveland metro area experienced the largest drop (27 percent) in the number of jobs near the average resident from 2000 to 2012.[6]

80.     Another Brookings Institution report found that only one-quarter of jobs in low- and middle-skill industries are accessible via transit within 90 minutes for the typical metropolitan commuter nationwide, while one-third of jobs in high-skill industries are accessible via transit.  Immigrants and children of immigrants disproportionately work in lower-skilled jobs and thus are more likely to have difficulty getting to work on public transportation.[7]

81.     A report by the Federal Reserve Bank of Cleveland found that jobs are least accessible for workers with only a high school degree and for positions that pay less than $1,250.00 per month.[8]

82.     According to a Policy Matters Ohio report, Ohio's public transportation is grossly underfunded.  This will likely require most Ohio residents to continue to rely on cars for transportation to work, school, and other errands for the foreseeable future.[9]

83.     A.M. is currently a high school student at the Maritime Academy of Toledo. A.M. suffers from depression and receives some assisted education services. A.M. wishes to obtain an after-school job so that he may supplement his family's income. He also feels it will help him relieve his depression symptoms. Because he is unable to get a driver's license, A.M. is

---

[6] Elizabeth Kneebone and Natalie Holmes, "The growing distance between people and jobs in metropolitan America," Brookings, Washington D.C.: 2015.
[7] https://www.brookings.edu/research/missed-opportunity-transit-and-jobs-in-metropolitan-america/
[8] https://www.clevelandfed.org/newsroom-and-events/publications/a-look-behind-the-numbers/albtn-20151123-a-long-ride-to-work-job-access-and-public-transportation-in-northeast-ohio.aspx#U3
[9] https://www.policymattersohio.org/research-policy/sustainable-communities/smart-transportation/testimony-to-house-finance-subcommittee-on-transportation

severely limited in his ability to obtain employment. Further, since his mother is ineligible for an Ohio driver's license, the family has limited means of traveling independently.

84.     J.G.R. is a high school student at Independence High School in Columbus, Ohio.  She depends on friends and family for rides to and from school and to her part-time job at a fast food restaurant.  It is difficult for her to attend school and work to support herself and her family when she has no ability to drive herself to work, school, and other commitments.

85.     Additionally, as described in paragraphs 67-74, Organizational Plaintiff IJPC has been harmed by the BMV's policy preventing undocumented parents from co-signing for their minor children's driver's license applications.  Staff and volunteers at IJPC have had to divert resources to advocate for members and to transport otherwise-eligible members who cannot obtain driver's licenses because of their parents' immigration status. The BMV's discriminatory policy has frustrated IJPC's efforts to promote immigrant integration in the greater Cincinnati area. Organizational Plaintiff IJPC primarily serves low-income immigrants. Low-income people especially face challenges in obtaining transportation if they do not have access to a driver's license.

## VI.     CLASS ACTION ALLEGATIONS

86.     Plaintiffs bring this class action on behalf of themselves and all others similarly situated.  The proposed class is defined as follows:

> All 16- and 17-year-olds residing in Ohio who are U.S. citizens or otherwise "legally present," and whose parents are non-citizens and do not possess the required USCIS documentation to co-sign the minors' driver's license or state identification card applications.

21

87.     Plaintiffs and members of the classes bring this action for equitable, declaratory, and injunctive relief pursuant to subdivision (b)(2) of Rule 23 of the Federal Rules of Civil Procedure.

88.     Although the precise size of the class is unknown, Plaintiffs conservatively estimate that the class contains approximately 3,000 members, based on nationwide census and immigration agency data regarding the number of minor children in Ohio who live with an undocumented parent but are themselves U.S. citizens or hold other lawful immigration status like DACA.  According to a Migration Policy Institute analysis of data from the U.S. Census Bureau, during the period of 2009 to 2013, approximately 25,000 U.S.-citizen minor children living in Ohio had at least one undocumented parent (this number is likely even greater now because the foreign-born adult population in Ohio has increased since 2013).[10] Assuming a roughly equal population split across children ages 0-17, about 11.1% of these 25,000 U.S. citizen children, or 2,775 children, would be 16 or 17 years old.  Additionally, according to USCIS data, 4,292 Ohio residents received initial grants of DACA from FY 2012 (when the program began accepting applications) to FY 2017.[11]  Because DACA holders must be 15 years old to apply to the program and must not have reached the age of 31 years old by June 15, 2012, only a small percentage of those 4,292 DACA holders are currently under the age of 18; therefore, this portion of the class is likely a few hundred individuals.  Accordingly, the total estimated class size is likely around 3,000 members.

---

[10] https://www.migrationpolicy.org/research/profile-us-children-unauthorized-immigrant-parents (Table A-2).
[11] USCIS, "Number of 821D Consideration of Deferred Action for Childhood Arrivals by Fiscal Year, Quarter, Intake, Biometrics and Case Status FY 2012-2017," *available at* https://www.uscis.gov/sites/default/files/USCIS/Resources/Reports%20and%20Studies/Immigration%20Forms%20Data/All%20Form%20Types/DACA/daca_performancedata_fy2017_qtr1.pdf.

89.     This proposed class total is so numerous that individual joinder of all its members would be impracticable.  Class members live throughout the state of Ohio.

90.     Joinder is also impracticable because this population undergoes change, many class members are unaware of their rights, and class members' access to legal services and representation is hampered by language, cultural, and economic barriers.  The proposed class of 16- and 17-year-old minors affected by the policy changes 100% every two years because all members of the class, by virtue of turning 18, cease to be affected by the BMV's co-signer policy.

91.     There are many questions of law and fact common to the representative Plaintiffs and the members of the class, including the following:

> i.     Whether Defendant's policy of refusing to allow the parents of a minor to co-sign a driver's license or state identification card application absent proof of lawful presence is discriminatory against DACA recipients or Special Immigrant Juvenile Status holders on the basis of their alienage or discriminatory against U.S. citizens on the basis of their parents' alienage.

92.     The claims of the named Plaintiffs are typical of the claims of the class because the named Plaintiffs have been subjected to the same policies to which the class members have been subjected.

93.     The organizational Plaintiff IJPC has members or has worked with driver's license applicants and their parents or guardians who have been denied driver's licenses or state identification cards.  IJPC members have been subjected to Defendant's violations of the U.S. Constitution and federal law.

94.    The named Plaintiffs will fairly and adequately protect the interests of the class. There is no conflict between the Plaintiffs and other class members. Moreover, Plaintiffs are represented by attorneys from Advocates for Basic Legal Equality, which has litigated numerous civil-rights suits on behalf of non-citizens in federal court, including class actions, and can adequately represent the interests of the class members as well as those of the named Plaintiffs.

95.    Defendant has acted on grounds generally applicable to both the named Plaintiffs and other class members, making appropriate final declaratory and injunctive relief with respect to the members of the class. The injuries suffered by the named Plaintiffs and other class members as a result of Defendant's policies are capable of repetition yet may evade review, thereby making individual and class relief appropriate.

## VII.    CAUSE OF ACTION

## CLASS CLAIM FOR INJUNCTIVE RELIEF (UNDER *EX PARTE YOUNG*)

Fourteenth Amendment (42 U.S.C. § 1983) Claim for Violation of The Right To Equal Protection of Law

96.    Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

97.    The Fourteenth Amendment to the U.S. Constitution provides that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

98.    The BMV has and enforces a policy of preventing the foreign-born parents of driver's license and state identification card applicants who are 16 and 17 years of age from co-signing for the application if they cannot produce the required USCIS documentation.

24

99.     During all relevant times, including in the promulgation and enforcement of this policy, Defendant has acted under color of state law.

100.    Defendant's policy impermissibly discriminates against Plaintiffs and class members – all of whom are either citizens or are currently authorized by the federal government to stay and work in the United States – on the basis of their alienage or their parents' alienage.

101.    Defendant's policy impermissibly discriminates between Plaintiffs and class members who are non-citizens and other categories of non-citizens.

102.    Defendant's policy also impermissibly discriminates against U.S. citizen-Plaintiffs and class members on the basis of their parents' immigration status.

103.    Defendant's policies are not rationally related to any legitimate state interest.

104.    Defendant's policies are not narrowly tailored to further a compelling state interest.

105.    Defendant's policies deny Plaintiffs and class members equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

A.      Assume jurisdiction over this matter;

B.      Issue an order certifying this action to proceed as a class action pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure;

C.      Appoint the undersigned as class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure;

D.      Issue a judgment declaring that Defendant's policies, practices, acts, and omissions described herein violate Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

E.      Permanently enjoin Defendant, his subordinates, agents, employees, and all others acting in concert with him from subjecting Plaintiffs to the unconstitutional and illegal policies described herein, and issue injunctive relief sufficient to rectify those conditions, including:

i.      Allowing non-citizen parents who lack required USCIS documentation of "legal presence" to co-sign for their minor children on state identification card or driver's license applications without providing such documentation, or, in the alternative, allow for non-parent/non-guardian adults to serve as co-signers provided one or both parents execute a power of attorney granting permission for the non-parent/non-guardian adult to serve in this capacity;

F.      Award reasonable attorneys' fees and costs to Plaintiffs pursuant to 42 U.S.C. § 1988 and any other applicable law; and

G.      Grant any other relief the Court deems appropriate.

## JURY DEMAND

Plaintiffs demand a jury trial on the claims triable as of right by jury set forth herein.


Respectfully submitted,


By:     */s/ Emily M. Brown*
        Emily M. Brown (0092553)
        Kathleen C. Kersh (0091198)
        Mark R. Heller (0027027)
        Eugenio Mollo, Jr. (0081860)

        ADVOCATES FOR BASIC LEGAL EQUALITY, INC.
        130 West Second St., Suite 700E
        Dayton, Ohio 45402
        937.535.4408  (phone)
        937.535.4600  (fax)

ebrown@ablelaw.org
kkersh@ablelaw.org
mheller@ablelaw.org
emollo@ablelaw.org

*Attorneys for Plaintiffs*