**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **INTERCOMMUNITY JUSTICE AND PEACE CENTER; Erlin Lorena RODRIGUEZ ENAMORADO, individually and as next friend of J.G.R.; Maria MONJARA, individually and as next friend of A.M.; and Maria CABRERA, individually and as next friend of K.I.A., on behalf of themselves and all others similarly situated** | ) ) ) ) ) ) ) ) | **No. 2:18-cv-1247** |
|  | ) | **Chief Judge Sargus** |
|  | ) | **Magistrate Judge Jolson** |
| **Plaintiffs,** | ) ) |  |
| **v.** | ) ) |  |
| **Charles NORMAN, Registrar, Ohio Bureau of Motor Vehicles, in his official capacity,** | ) ) ) |  |
| **Defendant.** | ) ) |  |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

A putative class of 16- and 17-year old Ohio residents—most of whom were born in this country and are U.S. citizens—brings this action against Bureau of Motor Vehicles ("BMV") Registrar Charles Norman to challenge the BMV's discriminatory policy that denies driver's licenses to otherwise-eligible minors.

Obtaining a temporary instruction permit at age 15 and then a driver's license at age 16 is a familiar rite of passage for teenagers across Ohio. It is also a step to gaining independence, supporting oneself and assisting one's family financially, and attending school and extracurricular activities. However, thousands of noncitizen and U.S.-citizen minors across Ohio who are otherwise eligible to obtain these licenses are unable to do so because of the national origin and immigration status of their parents. The BMV has enacted a discriminatory policy that

1

requires a parent or guardian to prove lawful immigration status in order to co-sign for the minor child if the parent is not a U.S. citizen.  When a parent or legal guardian cannot provide such documentation, BMV policy prohibits any other adult from serving as a co-signer. This policy denies or delays the issuance of driver's licenses and identification cards to otherwise-eligible individuals solely on the basis of a minor's parents' alienage and national origin and, consequently, violates those minors' right to equal protection of the laws.  Plaintiffs and putative class members seek injunctive and declaratory relief against Defendant and the cessation of this discriminatory policy.

Contrary to Defendant's assertions in its Motion to Dismiss, Plaintiffs do not contend that the BMV's policy is preempted by federal law or that the state lacks the authority to set requirements for the issuance of driver's licenses.  Rather, the central question in this case is whether the BMV may enact a policy that facially discriminates against Plaintiffs and putative class members by classifying them on the basis of their parents' alienage and national origin.

Plaintiffs respectfully ask the Court to deny Defendant's motion to dismiss their cause of action under the Equal Protection Clause of the Fourteenth Amendment.

## I.     FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Plaintiffs include: 1) three Ohio residents who by virtue of their ages (16 and 17) are eligible to apply for a temporary instruction permit identification card ("TIPIC") and, after satisfying driver's education requirements and passing a driving test, a driver's license; 2) the three sole custodial parents of each of the three minors, who by virtue of their immigration status cannot cosign for their children's driver's license applications; and 3) organizational plaintiff Intercommunity Justice and Peace Center ("IJPC"), a Cincinnati-based nonprofit organization with a mission of promoting immigrant rights, developing leadership ability in its members (who

2

include immigrant youth and the U.S.-citizen children of immigrants), and counteracting discrimination against its members.  Am. Compl., Doc. 11, at ¶¶ 6-16.

Plaintiffs filed an amended complaint on December 4, 2018 seeking injunctive and declaratory relief against the Registrar of the BMV.  They also seek certification for the following class:

> All 16- and 17-year-olds residing in Ohio who are U.S. citizens or otherwise "legally present," and whose parents are non-citizens and do not possess the required USCIS documentation to co-sign the minors' driver's license or state identification card applications.

Am. Compl. ¶ 101; Mot. for Class Cert., Doc. 15.  Defendants have stipulated that if the allegations in the amended complaint are true, under current BMV policy minor Plaintiffs K.I.A., A.M., and J.G.R. all meet the BMV's "legal presence" requirement.  Statement of Stipulated Facts, Doc. 23 ¶ 12.  Therefore, each minor Plaintiff's only obstacle to obtaining a temporary permit and a license is an inability to obtain a policy-eligible co-signer.

Defendant filed a motion to dismiss Plaintiffs' amended complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that K.I.A. lacks standing because her claim is not ripe for review, and that the remaining Plaintiffs have not stated a claim for a violation of their rights under the Equal Protection Clause of the Fourteenth Amendment.  On January 24, 2019, the parties filed a Statement of Stipulated Facts for the purpose of dispositive motions.  Doc. 23.

Ohio Law and BMV Policies:

The Ohio Revised Code establishes the requirements for the issuance of driver's licenses to Ohio residents.  *See generally* Ohio Rev. Code § 4507.  Ohio requires a driver's license applicant to be eighteen years of age or older, except that a person who is at least sixteen years of age and has held a temporary instruction permit identification card ("TIPIC") for a period of at least six months may apply for and receive a probationary license.  *Id.* §

4507.071(A). Pursuant to BMV regulations, all applicants for a license or a TIPIC must present documents sufficient to show five elements: the person's "(1) Full legal name; (2) Date of birth; (3) Social security number; (4) Street address of the person's principal residence in the state of Ohio; and (5) Status as a citizen, permanent resident, or temporary resident of the United States." Ohio Adm. Code § 4501-1-1-21(C).

In order to show the fifth element, commonly called "legal presence" in BMV parlance, applicants must establish "legal presence" in the United States by submitting "original and valid" U.S. Citizenship and Immigration Services ("USCIS") documents "showing the dates of legal presence." Ohio Adm. Code § 4501:1-1-21(G)(6). The acceptable identification documents required by the Ohio Administrative Code are the same for a temporary instruction permit as for a driver's license. *See id.* § 4501:1-1-21(A).

The Ohio Revised Code further provides that for any minor under eighteen years of age to receive a probationary license, the minor's application must be "signed by one of the minor's parents, the minor's guardian, another person having custody of the applicant, or, if there is no parent or guardian, a responsible person who is willing to assume the obligation imposed under this section." Ohio Rev. Code § 4507.07(A).[1] The co-signer "shall present identification establishing that the adult is the individual whose signature appears on the application." *Id.* The Revised Code further provides that "the [BMV] registrar shall prescribe, by rule, the types of

---

[1] Ohio Revised Code §§ 4507.50 and 4507.51 govern the issuance of state identification cards. An identification card is not valid for the purpose of operating a motor vehicle, and there is no age requirement to obtain one. *Id.* at § 4507.52(A). The Revised Code requires that, like a TIPIC or a driver's license application, a minor applicant for an identification card have a cosigner. *Id.* § 4507.51(A)(1). *See also* Driver Manual, Doc. 23-2, PageID 267 ("Cosigner Requirements for all types of Ohio Credentials").

identification that are suitable for" this purpose.  *Id.*  Co-signers are required by regulation to present this identification when co-signing an application for either a temporary instruction permit or a driver's license.  *See* Ohio Adm. Code § 4501:1-1-19(C).

The Revised Code and the Administrative Code are silent on the question of what documents a cosigner (as opposed to an applicant) must present to the Deputy Registrar in order to "establish[] that the adult is the individual whose signature appears on the application."  Ohio Rev. Code § 4507.07(A).  But the BMV Driver Manual has implemented a policy requiring that a cosigner "present proof of identity by presenting an Ohio credential or proof of the five elements. If the cosigner is not an Ohio resident, an out-of-state credential and proof of SSN is acceptable as proof of identity."[2] Driver Manual (Rev. 11/6/2018), Doc. 23-2, PageID 267.  The five elements referenced herein are those laid out in the Ohio Administrative Code, the last of which, "status as a citizen, permanent resident, or temporary resident of the United States," the BMV terms "legal presence."  Ohio Adm. Code § 4501-1-1-21(C).

The Revised Code and Administrative Code are also silent on the question of when Deputy Registrars may consider there to be "no parent or guardian," and thus allow another "responsible person" to co-sign.  Ohio Rev. Code § 4507.07(A).  The BMV has interpreted the policy to allow only a parent or legal guardian to be the co-signer unless the minor is emancipated.  Driver Manual, Doc. 23-2, PageID 268 ("A cosigner must be asked if he or she is a legal parent or guardian of the applicant but is not required to provide documentation proving the relationship or guardianship.").

Plaintiff J.G.R.

---

[2] A previous version of the Driver Manual provided that when a co-signer is "a citizen of another country," he or she is required to provide "all USCIS documents" to establish "legal presence in the United States."  Am. Compl., Doc. 11-2, PageID 133.

J.G.R. is a seventeen-year-old beneficiary of an approved petition for Special Immigrant Juvenile Status, Form I-360,[3] and a resident of Columbus.  Am. Compl. ¶ 53.  As such, she is currently awaiting the availability of a visa in order to adjust her status.  *Id.*; 8 U.S.C. § 1153(b)(4) (describing availability of immigrant visas for special immigrants).  Pursuant to BMV policy and federal law, J.G.R. has the requisite immigration documentation to obtain an Ohio driver's license or state identification card.  *Id.* at ¶ 54; Statement of Stipulated Facts, Doc. 23 at ¶ 9.

When J.G.R. was sixteen years old, she applied for a state identification card at the BMV Deputy Registrar[4] on East Broad Street in Columbus, Ohio.  Am. Compl. at ¶ 55.  J.G.R. brought with her an Employment Authorization Document, Honduran birth certificate, and Social Security card.  *Id.* She was accompanied by her mother, Erlin Lorena Rodriguez Enamorado, who is her only custodial parent and intended to serve as J.G.R.'s co-signer.  *Id.* at ¶ 56.  Deputy Registrar staff asked Ms. Rodriguez Enamorado for her identification, and she presented a valid Honduran passport.  *Id.* at ¶ 57.  Because of her immigration status, Ms. Rodriguez Enamorado is not eligible for an Ohio driver's license and does not have the required USCIS documents to show lawful status.  *Id.*  The Deputy Registrar denied J.G.R.'s application

---

[3] Certain unmarried noncitizens who are under 21 years of age and are present in the United States may obtain "special immigrant juvenile status" if they meet the following criteria: (a) a juvenile court has declared them a dependent of the state and found that reunification with at least one of their parents is not viable due to abuse, neglect or abandonment; and (b) a juvenile court has declared that it is not in their best interests to be returned to their country of nationality or last habitual residence.  INA § 101(a)(27)(J).  Once an individual attains special immigrant juvenile status, the INA allows them to remain in the United States indefinitely and adjust status to lawful permanent residence under INA § 245(a) when a visa becomes available.

[4] The BMV has the exclusive authority to issue driver's licenses and state identification cards in Ohio, but the BMV has signed contracts with 186 Deputy Registrars, as independent contractors, which provide services throughout Ohio's 88 counties, including issuing driver's licenses and state identification cards. *See* Ohio Rev. Code § 4507.01(B); Statement of Stipulated Facts, Doc. 23 ¶¶ 2-3.

for an Ohio state identification card, finding that Ms. Rodriguez Enamorado could not serve as J.G.R.'s co-signer. *Id.* at ¶ 58.

One week later, J.G.R. returned to the same BMV Deputy Registrar location with Jorge Pagon, a family friend who presented an Ohio-issued photo ID and proof of lawful immigration status. *Id.* at ¶ 59. The East Broad Street BMV Deputy Registrar again refused to issue J.G.R. a state identification card, stating that BMV policy prohibited Mr. Pagon from serving as J.G.R.'s co-signer because he was not her parent or legal guardian. *Id.* at ¶ 60. Because the BMV would not permit her mother or Mr. Pagon to co-sign for her state identification card, BMV policy would similarly prevent J.G.R. from obtaining a driver's license until she is 18 years old. *Id.*; *see* Driver Manual, Doc. 23-2, PageID 267.

Plaintiff A.M.

A.M. is a seventeen-year-old U.S. citizen and resident of Toledo. *Id.* at ¶ 61. He lives with his mother and sole custodial parent, Maria Monjaraz, who is a citizen of Mexico. *Id.* at ¶¶ 61-62. In April 2017, when he was fifteen-and-a-half years old, A.M. applied for an Ohio temporary instruction permit identification card ("TIPIC") at a BMV Deputy Registrar in Oregon, Ohio. *Id.* at ¶ 63. A.M.'s mother, Ms. Monjaraz, accompanied him to serve as his co-signer and presented a valid Mexican consular identification card to the Deputy Registrar staff as proof of her identity. *Id.* at ¶¶ 64-65. BMV Deputy Registrar staff denied A.M.'s application for a TIPIC because Ms. Monjaraz did not have a valid Ohio identification card or USCIS documents showing lawful immigration status, which she does not possess. *Id.* at ¶ 68.

Jacquelin Ocampo, a U.S.-citizen friend of Ms. Monjaraz, also accompanied the family to the Deputy Registrar to attempt to serve as a co-signer, but Deputy Registrar staff refused to allow her to co-sign because she is not A.M.'s parent or legal guardian. *Id.* at ¶ 69.

Plaintiff K.I.A.

        K.I.A. is a sixteen-year-old U.S. citizen and resident of Cincinnati and a member of Plaintiff Intercommunity Justice and Peace Center ("IJPC") and its Youth Educating Society ("YES") program. *Id.* at ¶¶ 70, 79. She lives with her mother and sole custodial parent, Maria Cabrera, a citizen of Mexico. *Id.* at ¶¶ 70-71. Before K.I.A. was even eligible for a TIPIC, Ms. Cabrera had encountered the BMV's co-signer policy because K.I.A.'s older sister, Esther, who is now 18 years old and has been a U.S. citizen since birth, tried to obtain a TIPIC at the Deputy Registrar in Sharonville, Ohio. *Id.* at ¶¶ 71-72. When Esther and Ms. Cabrera went to the Deputy Registrar so that Esther could apply for a TIPIC, Ms. Cabrera presented a valid Mexican passport and valid Mexican consular identity card, but the Deputy Registrar rejected the documents. *Id.* at ¶¶ 74. Ms. Cabrera could not present a valid Ohio driver's license or USCIS documents because she lacks lawful immigration status. *Id.* Accordingly, she never attempted to take K.I.A. to a Deputy Registrar to apply for a TIPIC because she knew that pursuant to BMV policy K.I.A. could not obtain a TIPIC or a license while she was a minor. *Id.* at ¶ 78.

Plaintiff IJPC:

        The Intercommunity Justice and Peace Center ("IJPC") is an education and advocacy organization in Cincinnati, Ohio. *Id.* at ¶ 80. IJPC's work includes hosting and supporting the YES program, which has approximately fifty members and promotes leadership development and advocacy in young immigrants, children of immigrants, and their allies. *Id.* at ¶ 81. IJPC teaches YES members effective storytelling tools, fosters leadership development, and provides fora for them to engage in immigrants' rights advocacy. *Id.* IJPC employs several staff members, including one-part time staff member who runs the YES program. *Id.* at ¶ 82.

IJPC staff have had to spend resources advocating with the BMV for their license-eligible YES members' right to a driver's license or state identification card. *Id.* at ¶ 84. They have spent many hours driving members to and from YES program activities because these members—who are otherwise eligible for driver's licenses—were unable to obtain a driver's license since their parents could not serve as co-signers under BMV policy. *Id.* IJPC staff has diverted significant staff hours (including staff who do not normally work with YES members) and additional financial resources because of the detrimental effects of this BMV policy on their membership. *Id.* at ¶ 85. The BMV co-signer policy frustrates IJPC's mission to educate communities about immigrants' rights and to advocate against discrimination and prevents them from devoting resources to its core mission of community education and the promotion of immigrant rights. *Id.* at ¶¶ 86-87. Further, YES members who are otherwise eligible to obtain driver's licenses face barriers to participating in YES outreach and education activities because the BMV co-signer policy prevents from obtaining a license or identification card. *Id.*

## II.     RULE 12(B)(6) STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Keys v. Humana*, 684 F.3d 605, 608 (6th Cir. 2012). In determining whether to grant a motion to dismiss under Federal Rule 12(b)(6), courts consider whether the complaint includes sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must interpret the complaint in the light most favorably to the plaintiff, accepting factual allegations as true, and giving the plaintiff the benefit of reasonable inferences. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the

9

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### III.     ARGUMENT

**A.  Plaintiff K.I.A.'s claim against the Registrar is ripe because the BMV does not require the completion of driver's education class before issuing a temporary instruction permit identification card to a minor.**

Defendant challenges the standing of K.I.A. because she has not taken the driver's education class required of minor drivers who apply for a driver's license.  Def's Mot. to Dismiss, Doc. 25 at 8; Am. Compl. ¶ 78. The BMV's argument is based on a misstatement of its own policy; in fact, a driver's education class is a requirement of obtaining a driver's *license*, not a requirement to obtain a TIPIC; all minor applicants for a driver's license must first obtain a TIPIC and hold it for six months.

The Ohio Revised Code requires a minor to have completed a driver's education course before she receives a driver's license, not before she receives a temporary instruction permit identification card ("TIPIC").  Ohio Rev. Code § 4507.21(B)(1) ("Each person under eighteen years of age applying for a driver's license issued in this state shall present satisfactory evidence of having successfully completed….[a driver education course].").  Further, the Ohio Administrative Code § 4501:1-1-07 provides only that applicants for a TIPIC must: 1) pass a vision test and satisfy an inquiry that they have no physical disability that would impair their ability to operate a motor vehicle; 2) pass written tests regarding the Ohio motor vehicle laws and highway warnings, traffic signs, and signaling devices.  Ohio Adm. Code § 4501:1-1-08 (A).  The Driver Manual provides the same.  *See* Driver Manual, Doc. 23-2, PageID 278-79.  Driver's education courses (both classroom and behind-the-wheel instruction) are not requirements to

obtain a TIPIC. *See also* BMV Driver Manual, Doc. 23-2, PageID 283 (noting that for a minor to obtain a *driver's license*, she must "[c]omplete a driver education course").

Because K.I.A. does not have a co-signer who can present the documents required by the BMV co-signer policy, she is unable to obtain a TIPIC, the required first step for a minor who wishes to obtain a driver's license. *See* Ohio Rev. Code § 4507.071(A) (providing that a minor must attain the age of 16 and hold a TIPIC for six months before obtaining a driver's license).

Furthermore, even if driver's education *were* a requirement to obtain a TIPIC—which it is not—K.I.A. would still have standing to challenge the BMV's policy because her claim is ripe for review. The ripeness doctrine "aims to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Hill v. Snyder*, 878 F.3d 193, 213 (6th Cir. 2017) (internal quotation marks omitted). A claim is ripe where it is "fit for judicial decision" and where "withholding court consideration" will cause hardship to the parties. *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149, 153 (1967)).

Here, the impact of the BMV's policy upon K.I.A. "is sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage." *Abbott Labs*, 387 U.S. at 152. There is no dispute that the BMV's cosigner policy applies to her and that she will ultimately be unable to obtain a driver's license because she does not have a parent or guardian who can co-sign her application. *See Hill*, 878 F.3d at 214 (holding that a facial constitutional challenge to a statutory scheme of resentencing criminal defendants was ripe for review even if the parole board had not yet conducted individual plaintiffs' own resentencing determinations); *see also Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 274 F.3d 377, 399 (6th Cir. 2001) (finding that a group of plaintiffs could challenge an ordinance's "judicial review provisions" even before seeking the permits that were the subject of the ordinance).

11

Additionally, finding that her claim is not ripe would cause her hardship.  First, requiring a low-income family to spend money on driver's education courses when K.I.A. is categorically barred from actually obtaining a driver's license until she is 18 is a financial hardship.  Am. Compl. ¶¶ 73, 78.  Secondly, as in *Hill*, where, as here, the plaintiffs sought to proceed as a class, "relegating these issues to piecemeal resolution by individual[s]…risks duplicative litigation and inconsistent determination of constitutional questions."  878 F.3d at 215.  Allowing K.I.A. to remain in this suit as an individual plaintiff and class representative "will avoid patchwork decisions, promote consistency, conserve scarce judicial resources, and provide crucial guidance to the parties and the public alike."  *Id.*

B.  **Plaintiffs have stated a claim under Section 1983 that the Registrar's policy denies Plaintiffs the equal protection of the laws in violation of the Fourteenth Amendment.**

The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike" under the law.  *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  If a state does not burden a fundamental right or target a suspect classification, it will withstand constitutional scrutiny so long as it bears a rational relationship to a legitimate state interest.[5]  *Vacco v. Quill*, 117 S.Ct. 2293, 2297 (1997). However, if a state law or policy makes a classification based on race, national origin, or alienage, it violates the Equal Protection Clause unless the state can demonstrate that the policy is "necessary to further a compelling governmental interest" and "narrowly tailored to that end." *Fisher v. Univ. of Tex. At Austin*, 133 S. Ct. 2411, 2422 (2013) (internal quotations omitted).

---

[5] Contrary to Defendant's suggestion, Plaintiffs do not contend that access to a driver's license is a fundamental right or that the denial of a license infringes Plaintiffs' right to travel.  *See* Def. Mot. to Dismiss, Doc. 25 at 17.

The BMV's policy facially discriminates against minor applicants for driver's license and state identification card applicants on the basis of their parents' alienage and national origin by interpreting the Ohio Revised Code's cosigner requirement to allow only a parent or legal guardian to cosign a minor's application and requiring that parent or legal guardian to have lawful immigration status.[6]

1. *The BMV's co-signer policy creates a classification based on alienage and national origin, and the policy is not narrowly tailored to advance a compelling state interest*

The Supreme Court has repeatedly applied strict scrutiny to state classifications based on national origin and alienage, holding that "classifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny," and that "[a]liens as a class are a prime example of a 'discrete and insular' minority for whom such heightened judicial solicitude is appropriate." *Graham v. Richardson*, 403 U.S. 365, 372 (1971) (internal citation and quotation marks omitted). The Supreme Court has applied strict scrutiny to state laws that treat lawful permanent residents and other authorized immigrants differently than other similarly situated individuals. *See, e.g.*, *Graham*, 403 U.S. at 376 (striking down an Arizona law that limited access to welfare benefits only to citizens and lawful permanent residents who had resided in the U.S. for at least 15 years); *Takahashi v. Fish & Game Comm.*, 334 U.S. 410, 420 (1948) (striking down a state's ban on the issuance of commercial fishing licenses to lawful resident aliens); *Nyquist v. Mauclet*, 432 U.S. 1, 12 (1977) (finding that New

---

[6] Plaintiffs also note that the BMV's interpretation of the statute to permit only parents to cosign is plainly erroneous because subsection (D) of the provision, which addresses the co-signer surrendering a license or TIPIC to the Deputy Registrar, provides for the minor to obtain a new license "if the minor is able to produce another parent, guardian, other person having custody of the minor, or other adult, and that adult is willing to assume the liability imposed under division (B) of this section." Ohio Rev. Code § 4507.07(D). This language demonstrates that another adult may co-sign the application and does not require a parent or legal guardian to do so.

13

York State college scholarship program requirement violated the Equal Protection Clause because it limited awards only to U.S. citizens, refugees, or those who intended to seek U.S. citizenship when eligible).[7]

Although cases presenting the question of discrimination against children based on the alienage or nationality of their parents are relatively rare, the Supreme Court has also applied strict scrutiny to an Equal Protection Clause claim of a child who, as in the instant case, asserted discrimination on the basis of his parent's alienage and national origin, rather than his own. *Oyama v. California*, 332 U.S. 633, 640 (1948). In *Oyama*, the U.S.-citizen son of a Japanese father challenged a prohibition on land transfers between non-citizen fathers and their children that did not exist for land transfers from other fathers to their children. *Id.* at 636. The Supreme Court applied strict scrutiny to the son's claim of discrimination on the basis of his father's immutable characteristic—his Japanese nationality—holding: "the State has discriminated against [the American citizen son]; the discrimination is based solely on his parents' country of origin; and there is absent the compelling justification which would be needed to sustain discrimination of that nature." *Id.* at 640. *See also L.P. v. Comm'r, Ind. Dep't of Health*, 2011 U.S. Dist. LEXIS 8154, at *9 (S.D. Ind. Jan. 27, 2011) (enjoining state policy requiring the paternity affidavit used to establish paternity for children out of wedlock to contain both parents' Social Security numbers, on the ground that the policy discriminates against U.S.-citizen children whose parents lack lawful immigration status and cannot obtain such numbers).

---

[7] The Supreme Court has subjected *federal* classifications based on alienage (which are not at issue in this case) to less stringent review. *Mathews v. Diaz*, 426 U.S. 67, 84-85 (1976) (noting that a classification based on alienage is "a routine and normally legitimate part" of the federal government's business, whereas a state would have "no apparent justification" to draw comparable distinctions).

Defendant argues that Plaintiffs have not stated a claim under the Equal Protection Clause because undocumented immigrants are not a suspect class, citing *Plyler v. Doe*, 457 U.S. 202, 219 n.2 (1982) (applying rational basis review to a class of undocumented children) and *LULAC v. Bredesen*, 500 F.3d 523 (6th Cir. 2007), which Defendant erroneously suggest control this case.  This is incorrect, because the suspect class in this case consists neither of undocumented immigrants, as in *Plyler*, nor lawful *temporary* residents, as in *LULAC*, but rather U.S. citizens and immigrants authorized to stay indefinitely in the United States.

The court should apply strict scrutiny to Plaintiffs' Equal Protection Clause claim because minor Plaintiffs and class members are all either U.S. citizens or immigrants on a path to U.S. citizenship.  *See* 8 U.S.C. § 1153(b)(4) (outlining path to adjustment of status for special immigrant juveniles which ultimately leads to eligibility for citizenship).  Therefore, they are similarly situated to citizens and noncitizens alike whom the REAL ID Act treats as having "lawful status" for the purpose of eligibility for a driver's license.  Pub. L. No. 109-13, § 202(c)(2)(B).  None of the individual minor plaintiffs or putative class members are unauthorized immigrants (to which strict scrutiny does not apply) or even temporary residents.  Defendant mischaracterizes the holding in *LULAC,* where the Sixth Circuit found that strict scrutiny did not apply to a class of "lawful *temporary* residents," and relied heavily on the fact that the class at issue consisted of "aliens whose authorized presence is tied to a specific purpose or defined period of time."[8]  *Id.* at 531 (emphasis in original).  By contrast, the U.S.-citizen (like K.I.A. and

---

[8] *LULAC* is also distinguishable because the Sixth Circuit relied heavily there on absence of harm to the plaintiffs, who were still eligible to receive driving certificates, which conferred driving privileges even though they could not be used for official identification.  500 F.3d at 532 (noting "the instant subclass of aliens hardly suffers any cognizable harm as a direct result of the classification").  By contrast, here, minor Plaintiffs are denied <u>any</u> access to driver's licenses and state identification cards while they remain minors.

A.M.) and immigrant minors here (like J.G.R., who is eligible to apply for lawful permanent residence and eventually citizenship and whose current Special Immigrant Juvenile status does not expire) are obviously so entitled.

Indeed, Plaintiffs here fit squarely into the Supreme Court caselaw applying strict scrutiny when a state law makes a classification on the basis of alienage.  As in *Graham*, *Takahashi*, and *Nyquist*, minor Plaintiffs can show that they are similarly situated to their comparator group—other minors who are eligible to obtain driver's licenses under federal and state law because they are citizens or otherwise lawfully present in the U.S.—but are treated differently on the basis of their parents' alienage.  And other circuits have applied strict scrutiny to classifications that target aliens with a variety of types of lawful status that, like Plaintiffs in the instant case, are distinguishable from the temporary residents in *LULAC* whose authorized presence is limited in time or purpose.  *See, e.g.*, *Exodus Refugee Immigration, Inc. v. Pence*, 838 F.3d 902, 904 (7th Cir. 2016) (rejecting Indiana's proffered "compelling interest" in refusing to resettle refugees and upholding a district court decision that this refusal was a violation of the Equal Protection Clause and targeted a suspect class of refugees, who are not lawful permanent residents but are nevertheless entitled to reside indefinitely in the United States); *Dandamudi v. Tisch*, 686 F.3d 66, 69-70 (2d Cir. 2012) (holding that a class of temporary work visa holders was subject to strict scrutiny because they were "aliens who have been lawfully admitted to reside and work in the United States" and noting that many of them had been in the U.S. for years and may eventually apply for and obtain permanent residence).

Defendant's policy, which denies children licenses when their parents cannot serve as co-signers because they cannot present documents evincing their lawful immigration status, and prevents any other adult from serving as cosigner if the parent cannot do so, is a suspect

16

classification that targets only those minors whose parents lack lawful status.  It creates a

distinction between Ohio minors who have parents without lawful immigration status and those

who do not, even though both groups are eligible for driver's licenses under Ohio state law and

the REAL ID Act.  As such, it is national-origin and alienage discrimination and therefore

requires that the state show that the policy is "necessary to further a compelling governmental

interest and narrowly tailored to that end." *Fisher*, 133 S. Ct. at 2422.

    2.  *Defendant's two proffered state interests are neither compelling nor legitimate.  Both interests fail to pass strict scrutiny and do not even pass muster under rational basis review because the BMV's policy of permitting only parents to co-sign and requiring cosigners to present documents showing lawful status is not rationally related to a legitimate state interest.*

To the extent that the Registrar seeks to argue that there is a compelling state interest in

requiring parents to present proof of the five elements in order to cosign, and no other adult to be

permitted to cosign—an argument it does not make in its motion to dismiss—discovery is

necessary to assess the strength of the state's interests and dismissal would be wholly

inappropriate at the motion-to-dismiss stage when the state has presented no compelling interest.

Defendant does present two interests that it characterizes as legitimate, which it argues

satisfies the lower burden of showing that the policy is rationally related to a legitimate state

interest.  *Vacco*, 117 S.Ct. at 2297.  Neither of these purportedly legitimate state interests is

sufficient to survive rational basis review, which, although a deferential standard, is "not a

toothless one."  *Mathews v. Lucas*, 427 U.S. 495, 510 (1976).  As in other cases where courts

struck down state laws or policies under rational basis review for targeting immigrant children

for disparate treatment, *Plyler*, 457 U.S. at 230, denying driver's licenses to recipients of

Deferred Action for Childhood Arrivals, *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1063-

67 (9th Cir. 2014), or denying automatic Medicaid eligibility for U.S.-citizen children of alien

17

mothers, *Lewis v. Thompson*, 252 F.3d 567, 591-92 (2d Cir. 2001), this Court should find that the BMV's co-signer policy is not rationally related to its two purported legitimate interests.

First, the BMV asserts that the state has a legitimate interest in verifying co-signer identification (including "legal presence" documents) for minor applicants because the co-signer has liability for a minor's vehicle accident and the state must ensure the identity of the person assuming such liability.  Second, the BMV asserts that it has a legitimate state interest in ensuring that an applicant has legal status in order to comply with the REAL ID Act.

**a.  First purported interest: verifying the co-signer's identity for liability purposes**

The first state interest is not legitimate because a parent can: 1) present bilingual identification verifying their identity such as a foreign passport or consular identity card, as Ms. Rodriguez Enamorado and Ms. Monjaraz did here; and 2) assume liability for a child's motor vehicle accidents regardless of whether that parent has lawful immigration status.

The purpose of the co-signer requirement is to impute "[a]ny negligence, or willful or wanton misconduct" that is committed by the minor "when driving a motor vehicle upon a highway."  Ohio Rev. Code § 4507.07(A).  There is no state or federal law that prohibits a person without lawful immigration status—like Plaintiffs' parents—from purchasing car insurance.  Additionally, the Revised Code contains an exception to the imputation of liability on the adult co-signer if the minor "has proof of financial responsibility with respect to the operation of a motor vehicle owned by the minor or, if the minor is not the owner of a motor vehicle, with respect to the minor's operation of any motor vehicle, in the form and in the amounts required under Chapter 4509 of the Revised Code," which is defined as the minimum liability insurance coverage required of all Ohio drivers. *Id.* at §§ 4507.07(B); 4509.01(K).

Additionally, minors are required to have a co-signer not only for a driver's license or a TIPIC but also for a state identification card; when a parent co-signs for her child's state

identification card application, she does not assume any liability because the statute only contemplates liability for "driving a motor vehicle upon a highway." *Id.* § 4507.07(B). This further undermines the state's argument that a co-signer must be a parent with lawful immigration status in order for the parent to assume liability for accidents.

Finally, this purported state interest does not in any way justify the Registrar's decision not to allow minors with undocumented parents to use another co-signer with lawful immigration status. Indeed, the Registrar curiously undermines his own argument by contending in the motion to dismiss that Plaintiffs cannot state a claim because deputy registrars "do not require proof of a specified relationship at the time a minor applicant applies for a license," and the co-signer's relationship to the applicant is "self-declared." Def. Mot. to Dismiss, Doc. 25 at 13. Defendant seems to suggest that Plaintiffs A.M. and J.G.R. could have brought in their family friends to co-sign for them without revealing their relationships because the co-signer "need not prove" that he or she is the legal parent or guardian "with documentation." *Id.* As Defendant readily concedes, however, the Driver's Manual *requires* Deputy Registrar staff to *ask* the co-signer "if he or she is the legal parent or guardian of the applicant." Driver's Manual, Doc 23-2, PageID 268; Statement of Stipulated Facts, Doc. 23 at ¶ 11. Therefore, if Ms. Ocampo and Mr. Pagon had "self-declare[d] the relationship at the time," they would have been lying because they have never been, at any point, the parent or legal guardian of A.M. and J.G.R., respectively.

Defendant's argument undermines its attempt to assert a legitimate, much less compelling, state interest in requiring the parent to be the co-signer for the applicant, because it essentially encourages applicants to present a non-parent as a co-signer while withholding the nature of their relationship from the Deputy Registrar. This calls into question whether a co-signer in fact needs to be a parent in order to satisfy Defendant's supposed state interests.

19

**b. Second purported interest: ensuring lawful status of the co-signer in order to comply with the REAL ID Act**

Nor is the second proffered state interest legitimate. The REAL ID Act is a federal statute that sets minimum standards for state driver's licenses and identification cards to be accepted for official purposes.  Pub. L. No. 109-13 § 202(a); 119 Stat. 313; (49 U.S.C. § 30301 codified as note); 6 C.F.R. § 37.11.  One of these requirements is that an applicant show certain documents evincing lawful immigration status. *Id.* at § 202(c)(2)(B).  But the REAL ID Act does not impose requirements for *co-signers* of a driver's license application, so Ohio would remain compliant with REAL ID even if it terminated its discriminatory co-signer policy and allowed parents without lawful status to co-sign (or other adults to co-sign for minors).

The Registrar asserts in his motion to dismiss that "the Registrar adopted a policy to treat a co-signer as a co-applicant for the purposes of obtaining a probationary driver's license."  Doc. 25 at 9.  However, the Registrar does not cite to any written policy stating as such, nor does the Driver Manual (or the Ohio Revised Code or Ohio Administrative Code) contain any statement that cosigners be treated as applicants themselves; rather, the Manual repeatedly refers to specific requirements for cosigners separate from those for applicants.  Accordingly, the Court, particularly at the motion to dismiss stage where the Court must consider only the factual allegations in Plaintiffs' amended complaint, should disregard this unsubstantiated assertion.

The state cannot assert compliance with the REAL ID Act as its legitimate state interest when it would in fact remain compliant with the Act if Plaintiffs receive their requested relief.

## IV. <u>CONCLUSION</u>

Plaintiffs ask the Court to deny Defendant's motion to dismiss Plaintiffs' amended complaint.

Respectfully submitted,


By:     /s/ Emily M. Brown
        Emily M. Brown (0092553)
        Kathleen C. Kersh (0091198)
        Mark R. Heller (0027027)
        Eugenio Mollo, Jr. (0081860)

        Advocates for Basic Legal Equality, Inc.
        130 West Second St., Suite 700E
        Dayton, Ohio 45402
        937-535-4408 (phone)
        937-535-4600 (fax)
        ebrown@ablelaw.org
        kkersh@ablelaw.org
        mheller@ablelaw.org
        emollo@ablelaw.org

        Caroline Gentry (0066138)
        Ana P. Crawford (0090581)
        David P. Shouvlin (0066154)
        Porter Wright Morris & Arthur LLP
        One South Main Street, Suite 1600
        Dayton, OH 45402
        937-449-6748 (phone)
        937-449-6820 (fax)
        cgentry@porterwright..com
        acrawford@porterwright.com
        dshouvlin@porterwright.com

        *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed electronically March 21, 2019. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's systems.

*s/ Emily M. Brown*
Emily M. Brown (0092553)

*Attorney for Plaintiffs*