# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

INTERCOMMUNITY JUSTICE
AND PEACE CENTER, et al.,

          **Plaintiffs,**

   v.

CHARLES L. NORMAN, REGISTRAR, OHIO
BUREAU OF MOTOR VEHICLES,
in his official capacity,

          **Defendant.**

Case No. 2:18-CV-1247
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

This matter is before the Court on the Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted filed by Defendant Charles L. Norman, Registrar ("Registrar") of the Ohio Bureau of Motor Vehicles ("BMV") (ECF No. 25), Plaintiffs' Memorandum in Opposition (ECF No. 29), and Defendant's Reply (ECF No. 30). For the reasons that follow, the Court **DENIES** Defendant's Motion.

### I.

In this action, a putative class of 16- and 17-year old Ohio residents, most of whom were born in the United States and are citizens, allege that a policy of the BMV Registrar denies them drivers' licenses and/or state identification cards based upon the immigration status of their parents. Plaintiffs' posit:

> Obtaining a temporary instruction permit at age 15 and then a driver's license at age 16 is a familiar rite of passage for teenagers across Ohio. It is also a step to gaining independence, supporting oneself and assisting one's family financially, and attending school and extracurricular activities. However, thousands of non-citizen and U.S.-citizen minors across Ohio who are otherwise

eligible to obtain these licenses are unable to do so because of the national origin and immigration status of their parents.

The BMV has enacted a discriminatory policy that requires a parent or guardian to prove lawful immigration status in order to co-sign for the minor child if the parent is not a U.S. citizen. When a parent or legal guardian cannot provide such documentation, BMV policy prohibits any other adult from serving as a co-signer. This policy denies or delays the issuance of driver's licenses and identification cards to otherwise-eligible individuals solely on the basis of a minor's parents' alienage and national origin and, consequently, violates those minors' right to equal protection of the laws. Plaintiffs and putative class members seek injunctive and declaratory relief against Defendant and the cessation of this discriminatory policy.

(Pls' Mem. in Opp. at 1–2, ECF No. 29.)

Plaintiffs assert claims under 42 U.S.C. § 1983 for violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

## A.    Relevant Statutes, Regulations, and Policies

Section 4507 of the Ohio Revised Code establishes the requirements for the issuance of driver's licenses to Ohio residents. Ohio requires a driver's license applicant to be eighteen years of age or older, except that a person who is at least sixteen years of age and has held a temporary instruction permit identification card for a period of at least six months may apply for and receive a probationary license. Ohio Rev. Code § 4507.071(A). Pursuant to BMV regulations, all applicants for a license or a temporary permit must present documents sufficient to show five elements: the person's "(1) Full legal name; (2) Date of birth; (3) Social security number; (4) Street address of the person's principal residence in the state of Ohio; and (5) Status as a citizen, permanent resident, or temporary resident of the United States." Ohio Adm. Code § 4501-1-1-21(C). These are the same five requirements of the REAL ID Act, a federal statute that sets minimum standards for state driver's licenses and identification cards to be accepted for

official purposes.[1]  Pub. L. No. 109-13 § 202(c)(2)(B); 119 Stat. 313; (49 U.S.C. § 30301 codified as note); 6 C.F.R. § 37.11.

To show the fifth element, commonly referred to by the BMV as "legal presence," applicants must establish legal presence in the United States by submitting "original and valid" United States Citizenship and Immigration Services ("USCIS") documents "showing the dates of legal presence." Ohio Adm. Code § 4501:1-1-21(G)(6).  The acceptable identification documents required by the Ohio Administrative Code are the same for a temporary instruction permit as for a driver's license.  *See id.* § 4501:1-1-21(A).

The issue at the heart of this lawsuit is embodied in § 4507.07(A) of the Ohio Revised Code, which provides that for any minor under eighteen years of age to receive a probationary license, the minor's application must be "signed by one of the minor's parents, the minor's guardian, another person having custody of the applicant, or, if there is no parent or guardian, a responsible person who is willing to assume the obligation imposed under this section." Ohio Rev. Code § 4507.07(A). The co-signer "shall present identification establishing that the adult is the individual whose signature appears on the application." *Id.* The Revised Code further provides that "the [BMV] registrar shall prescribe, by rule, the types of identification that are suitable for" this purpose. *Id.* Co-signers are required by regulation to present this identification when co-signing an application for either a temporary instruction permit or a driver's license. *See* Ohio Adm. Code § 4501:1-1-19(C).

The Revised Code and the Administrative Code are silent on the question of what documents a co-signer (as opposed to an applicant) must present to the Deputy Registrar in order

---

[1] The REAL ID Act is a portion of the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108–458, 118 Stat. 3638.

3

to "establish[] that the adult is the individual whose signature appears on the application." Ohio Rev. Code § 4507.07(A). The BMV Driver Manual has implemented a policy in this regard, requiring that a co-signer "present proof of identity by presenting an Ohio credential or proof of the five elements. If the co-signer is not an Ohio resident, an out-of-state credential and proof of SSN is acceptable as proof of identity." Driver Manual (Rev. 11/6/2018), ECF No. 23-2, PageID 267. The five elements from the Ohio Administrative Code and the REAL ID Act are set forth above, the fifth of which is the "legal presence" element. Ohio Adm. Code § 4501-1-1-21(C).

The Revised Code and Administrative Code are also silent on the question of when Deputy Registrars may consider there to be "no parent or guardian," and thus allow another "responsible person" to co-sign. Ohio Rev. Code § 4507.07(A). The BMV has interpreted the policy to allow only a parent or legal guardian to be the co-signer unless the minor is emancipated. Driver Manual, ECF No. 23-2, PageID 268 ("A co-signer must be asked if he or she is a legal parent or guardian of the applicant but is not required to provide documentation proving the relationship or guardianship.").

Ohio Revised Code §§ 4507.50 and 4507.51 govern the issuance of state identification cards. An identification card is not valid for the purpose of operating a motor vehicle, and there is no age requirement to obtain one. *Id.* at § 4507.52(A). The Revised Code requires that, like a temporary instruction permit or a driver's license application, a minor applicant for an identification card have a co-signer. *Id.* § 4507.51(A)(1). *See also* Driver Manual, Doc. 23-2, PageID 267 ("Co-signer Requirements for all types of Ohio Credentials"). Plaintiffs aver that, "[a]lthough the BMV policy regarding required USCIS documents for non-citizen co-signers is laid out only in the Drivers Manual, in a letter to Plaintiffs' counsel dated October 2, 2017, Defendant stated: 'the BMV applies the same identification requirements to Ohio driver's

4

licenses, commercial driver's licenses, temporary instruction permits, and state identification (ID) cards . . . .'" (Am. Compl. ¶ 45, Ex. 3.) Defendant agrees that the BMV policy requires the same identification to obtain a state identification card as is required to obtain a driver's permit. Therefore, the BMV co-signer policy applies to minors who apply for state identification cards and to those who apply for driver's licenses.

Defendant has stipulated that if the allegations in the Amended Complaint are true, under current BMV policy minor Plaintiffs K.I.A., A.M., and J.G.R. all meet the BMV's "legal presence" requirement. (Statement of Stipulated Facts, ECF No. 23 ¶ 12.) With that stipulation, the parties agree that each minor Plaintiff's only obstacle to obtaining a temporary instruction permit, driver's license, or state identification card is an inability to obtain a policy-eligible co-signer.

**B.      Relevant Facts**

Plaintiffs include: 1) K.I.A., A.M., and J.G.R., who are Ohio residents who by virtue of their ages (16 and 17) are eligible to apply for a temporary permit identification card and, after satisfying driver's education requirements and passing a driving test, a driver's license; 2) the three sole custodial parents of each of the three minors, who by virtue of their immigration status, cannot co-sign for their children's driver's license applications; and 3) organizational plaintiff Intercommunity Justice And Peace Center ("IJPC"), a Cincinnati-based nonprofit organization with a mission of promoting immigrant rights, developing leadership ability in its members (who include immigrant youth and the U.S.-citizen children of immigrants), and counteracting discrimination against its members. Am. Compl., ¶¶ 6–16, ECF No. 11.

### 1. Plaintiff A.M.

A.M. is a seventeen-year-old U.S. citizen and resident of Toledo. *Id.* at ¶ 61. He lives with his mother and sole custodial parent, Maria Monjaraz, who is a citizen of Mexico. *Id.* at ¶¶ 61–62. In April 2017, when he was fifteen-and-a-half years old, A.M. applied for an Ohio temporary instruction permit identification card at a BMV Deputy Registrar in Oregon, Ohio. *Id.* at ¶ 63. A.M.'s mother, Ms. Monjaraz, accompanied him to serve as his co-signer and presented a valid Mexican consular identification card to the Deputy Registrar staff as proof of her identity. *Id.* at ¶¶ 64–65. BMV Deputy Registrar staff denied A.M.'s application for a temporary instruction permit because Ms. Monjaraz did not have a valid Ohio identification card or USCIS documents showing lawful immigration status, which she does not possess. *Id.* at ¶ 68.

Jacquelin Ocampo, a U.S.-citizen friend of Ms. Monjaraz, also accompanied the family to the Deputy Registrar to attempt to serve as a co-signer, but Deputy Registrar staff refused to allow her to co-sign because she is not A.M.'s parent or legal guardian. *Id.* at ¶ 69.

### 2. Plaintiff K.I.A.

K.I.A. is a sixteen-year-old U.S. citizen and resident of Cincinnati and a member of Plaintiff IJPC and its Youth Educating Society ("YES") program. *Id.* at ¶¶ 70, 79. She lives with her mother and sole custodial parent, Maria Cabrera, a citizen of Mexico. *Id.* at ¶¶ 70–71. Before K.I.A. was eligible for a temporary permit, Ms. Cabrera had encountered the BMV's co-signer policy because K.I.A.'s older sister, Esther, who is now 18 years old and has been a U.S. citizen since birth, tried to obtain a temporary permit at the Deputy Registrar in Sharonville, Ohio. *Id.* at ¶¶ 71–72. When Esther and Ms. Cabrera went to the Deputy Registrar so that Esther could apply for a temporary permit, Ms. Cabrera presented a valid Mexican passport and valid Mexican consular identity card, but the Deputy Registrar rejected the documents. *Id.* at ¶

74. Ms. Cabrera could not present a valid Ohio driver's license or USCIS documents because she lacks lawful immigration status. *Id.* Accordingly, she never attempted to take K.I.A. to a Deputy Registrar to apply for a temporary permit because she knew that pursuant to BMV policy K.I.A. could not obtain a temporary permit or a license while she was a minor. *Id.* at ¶ 78.

### 3. Plaintiff J.G.R.

J.G.R. is a seventeen-year-old beneficiary of an approved petition for Special Immigrant Juvenile Status, Form I-360,3 and a resident of Columbus. Am. Compl. ¶ 53. As such, she is currently awaiting the availability of a visa in order to adjust her status. *Id.;* 8 U.S.C. § 1153(b)(4) (describing availability of immigrant visas for special immigrants). Pursuant to BMV policy and federal law, J.G.R. has the requisite immigration documentation to obtain an Ohio driver's license or state identification card. *Id.* at ¶ 54; Statement of Stipulated Facts ¶ 9.

When J.G.R. was sixteen years old, she applied for a state identification card at the BMV Deputy Registrar on East Broad Street in Columbus, Ohio. Am. Compl. at ¶ 55. J.G.R. brought with her an Employment Authorization Document, Honduran birth certificate, and Social Security card. *Id.* She was accompanied by her mother, Erlin Lorena Rodriguez Enamorado, who is her only custodial parent and intended to serve as J.G.R.'s co-signer. *Id.* at ¶ 56. Deputy Registrar staff asked Ms. Rodriguez Enamorado for her identification, and she presented a valid Honduran passport. *Id.* at ¶ 57. Because of her immigration status, Ms. Rodriguez Enamorado is not eligible for an Ohio driver's license and does not have the required USCIS documents to show lawful status. *Id.* The Deputy Registrar denied J.G.R.'s application for an Ohio state identification card, finding that Ms. Rodriguez Enamorado could not serve as J.G.R.'s co-signer. *Id.* at ¶ 58.

One week later, J.G.R. returned to the same BMV Deputy Registrar location with Jorge Pagon, a family friend who presented an Ohio-issued photo ID and proof of lawful immigration status. *Id.* at ¶ 59. The East Broad Street BMV Deputy Registrar again refused to issue J.G.R. a state identification card, stating that BMV policy prohibited Mr. Pagon from serving as J.G.R.'s co-signer because he was not her parent or legal guardian. *Id.* at ¶ 60. Because the BMV would not permit her mother or Mr. Pagon to co-sign for her state identification card, BMV policy would similarly prevent J.G.R. from obtaining a driver's license until she is 18 years old. *Id.*; *see* Driver Manual, Doc. 23-2, PageID 267.

### 4. Plaintiff Intercommunity Justice and Peace Center

The IJPC is an education and advocacy organization in Cincinnati, Ohio. *Id.* at ¶ 80. IJPC's work includes hosting and supporting the YES program, which has approximately fifty members and promotes leadership development and advocacy in young immigrants, children of immigrants, and their allies. *Id.* at ¶ 81. IJPC teaches YES members effective storytelling tools, fosters leadership development, and provides fora for them to engage in immigrants' rights advocacy. *Id.* IJPC employs several staff members, including one-part time staff member who runs the YES program. *Id.* at ¶ 82.

### II.

In evaluating a complaint to determine whether it states a claim upon which relief can be granted, a court must construe it in favor of the plaintiff, accept the factual allegations contained in the pleading as true, and determine whether the factual allegations present any plausible claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (clarifying the plausibility standard articulated in *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The

factual allegations of a pleading "must be enough to raise a right to relief above the speculative

level . . . ." *Twombly*, 550 U.S. at 555.

### III.

Defendant moves to dismiss the Amended Complaint in its entirety, arguing (A) that

K.I.A. lacks standing because her claim is not ripe for review, and (B) that the remaining

Plaintiffs have not stated a claim for a violation of their rights under the Equal Protection Clause

of the Fourteenth Amendment.

### A.     K.I.A. and Standing

Defendant moves to dismiss the claims made by K.I.A., asserting that she "does not have

standing to challenge the BMV's policy because her claim is not ripe for consideration." (Def's

Mot. to Dismiss at 8.). Defendant asserts:

> Plaintiff K.I.A.'s claim against the Registrar is not ripe for consideration by
> this Court. Because she has not taken the driver's education class required of all
> minor drivers applying for probationary driver's licenses, she is ineligible for a
> driver's license. Amended Complaint, p. 19, ¶ 78, R.C. 4507.21(B)(1). She suffers
> no hardship if judicial review is denied at this stage in the proceedings. The injury
> Plaintiffs allege cannot come to pass for her. No judicial resolution of this issue
> will result in a license for K.I.A.

*Id.*

Defendant correctly states "that 'the question in each case is whether the facts alleged,

under all the circumstances, show that there is a substantial controversy, between parties having

adverse legal interest, or sufficient immediacy and reality.'" (Def's Mot. at 8) (quoting

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Further, "[t]he

standing doctrine requires that a litigant have suffered an injury-in-fact that is fairly traceable to

the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."

*Peoples Rights Org. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Defendant concludes:

> K.I.A. has suffered no injury-in-fact because she is not eligible for a driver's license for reasons separate from the Registrar's policies. Even if Plaintiffs' requested relief is granted, K.I.A. would not be eligible for a driver's license. Her claim is therefore not ripe and should be dismissed.

*Id.* at 9.

Plaintiff responds that the Registrar's policies prevent her from obtaining a temporary instruction permit, the required first step for a minor who wishes to obtain a driver's license. She continues, explaining that "[t]he BMV's argument is based on a misstatement of its own policy; in fact, a driver's education class is a requirement of obtaining a driver's license, not a requirement to obtain a Temporary Permit; all minor applicants for a driver's license must first obtain a Temporary Permit and hold it for six months." (Pls' Mem. in Opp. at 10.) Because K.I.A. does not have a co-signer who can present the documents required by the BMV co-signer policy, she is unable to obtain a temporary instruction permit, the required first step for a minor who wishes to obtain a driver's license. Plaintiffs continue, stating:

> Here, the impact of the BMV's policy upon K.I.A. "is sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage." *Abbott Labs*, 387 U.S. at 152. There is no dispute that the BMV's co-signer policy applies to her and that she will ultimately be unable to obtain a driver's license because she does not have a parent or guardian who can co-sign her application. *See Hill*, 878 F.3d at 214 (holding that a facial constitutional challenge to a statutory scheme of resentencing criminal defendants was ripe for review even if the parole board had not yet conducted individual plaintiffs' own resentencing determinations); *see also Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 274 F.3d 377, 399 (6th Cir. 2001) (finding that a group of plaintiffs could challenge an ordinance's "judicial review provisions" even before seeking the permits that were the subject of the ordinance).

*Id.* Plaintiffs' arguments are well taken.

The Ohio Revised Code requires a minor to have completed a driver's education course before she receives a driver's license, not before she receives a temporary instruction permit. Ohio Rev. Code § 4507.21(B)(1) ("Each person under eighteen years of age applying for a driver's license issued in this state shall present satisfactory evidence of having successfully completed....[a driver education course]."). Because K.I.A. does not have a co-signer who can present the documents required by the BMV co-signer policy, she is unable to obtain a temporary permit, the required first step for a minor who wishes to obtain a driver's license. Ohio Rev. Code § 4507.071(A) (providing that a minor must attain the age of 16 and hold a Temporary Permit for six months before obtaining a driver's license). K.I.A. has therefore shown that she has a substantial controversy with the BMV, that they have adverse legal interests, and that there is sufficient immediacy to their dispute. Further, requiring a low-income family to spend money on driver's education courses when K.I.A. is categorically barred from actually obtaining a driver's license until she is eighteen is a financial hardship. Am. Compl. ¶¶ 73, 78.

The Court finds that the impact of the BMV's policy upon K.I.A. "is sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage." *Abbott Labs*, 387 U.S. at 152. There is no dispute that the BMV's co-signer policy applies to K.I.A. and that she will ultimately be unable to obtain a driver's license because she does not have a parent or guardian who can co-sign her application. Accordingly, the Court **DENIES** Defendant's Motion to Dismiss as it relates to dismissing K.I.A. from this litigation.

## B.     Equal Protection

The BMV policy at issue requires a parent or guardian to prove lawful immigration status in order to co-sign for the minor child if the parent is not a U.S. citizen., and, when a parent or legal guardian cannot provide such documentation, no other adult may serve as a co-signer.

Plaintiffs contend that this policy is discriminatory because it "denies or delays the issuance of driver's licenses and identification cards to otherwise-eligible individuals solely on the basis of a minor's parents' alienage and national origin and, consequently, violates those minors' right to equal protection of the laws." (Pls' Mem. in Opp. at 2.)

The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike" under the law. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). If a state does not burden a fundamental right or target a suspect classification, the law or policy will withstand constitutional scrutiny so long as it bears a rational relationship to a legitimate state interest. *Vacco v. Quill*, 117 S.Ct. 2293, 2297 (1997). However, if a state law or policy makes a classification based on race, national origin, or alienage, such law violates the Equal Protection Clause unless the state can demonstrate that the policy is "necessary to further a compelling governmental interest" and "narrowly tailored to that end." *Fisher v. Univ. of Tex. At Austin*, 133 S. Ct. 2411, 2422 (2013) (internal quotations omitted).

### 1. Review

Plaintiffs argue that "[t]he BMV's policy facially discriminates against minor applicants for driver's license and state identification card applicants on the basis of their parents' alienage and national origin by interpreting the Ohio Revised Code's co-signer requirement to allow only a parent or legal guardian to co-sign a minor's application and requiring that parent or legal guardian to have lawful immigration status." (Pls' Mem. in Opp. at 13.) Plaintiffs maintain that because the policy creates a classification based on alienage and national origin, it is subject to strict scrutiny.

Contrarily, Defendant argues that Plaintiffs have not stated a claim under the Equal Protection Clause because undocumented immigrants are not a suspect class entitled to strict scrutiny. To support his position, Defendant relies upon *Plyler v. Doe*, 457 U.S. 202, 219 n.2 (1982), where the Court applied rational basis review to a class of undocumented children, and *LULAC v. Bredesen*, 500 F.3d 523 (6th Cir. 2007), in which the Sixth Circuit applied rational basis review to a class of temporary residents.

Plaintiffs, however, respond that these cases are distinguishable in material ways "because the suspect class in this case consists neither of undocumented immigrants, as in *Plyler*, nor lawful temporary residents, as in *LULAC*, but rather U.S. citizens and immigrants authorized to stay indefinitely in the United States." (Pls' Mem. in Opp. at 15.) The minor plaintiffs and putative class members are all either U.S. citizens or immigrants on a path to U.S. citizenship. *See* 8 U.S.C. § 1153(b)(4) (outlining path to adjustment of status for special immigrant juveniles which ultimately leads to eligibility for citizenship). Therefore, they are similarly situated to citizens and noncitizens alike whom the REAL ID Act treats as having "lawful status" for the purpose of eligibility for a driver's license. Pub. L. No. 109-13, § 202(c)(2)(B). Yet, even though they are similarly situated to all other Ohio minors who have lawful status, the BMV policy discriminates against them based *only* on the alienage and national origin of their parents. Plaintiffs' arguments are well taken.

First, the Court starts with the text of the U.S. Constitution:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; . . . nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV.

U.S. Const. amend. XIV. The core of the putative class of minors in this case are full citizens of the United States and of Ohio, as clearly directed by the first sentence of the Fourteenth Amendment. The Fourteenth Amendment prohibits Ohio from making any law that abridges the privileges or immunities of these minor citizens. There is no gradation of citizenship; all citizens enjoy equal protection of the laws and privileges and immunities of citizenship. The Plaintiffs have stated a colorable claim that the distinction the BMV makes treats these citizens in a discriminatory way, denying them equal protection of the law.

Second, Plaintiffs are correct that the cases upon which Defendant relies are inapposite. That is, in *LULAC*, the Sixth Circuit found that strict scrutiny did not apply to a class of "lawful *temporary* residents," and relied heavily on the fact that the class at issue consisted of "aliens whose authorized presence is tied to a specific purpose or defined period of time." *Id.* at 531 (emphasis in original). By contrast, in the instant action the U.S.-citizen (K.I.A. and A.M.) and immigrant minors (J.G.R., who is eligible to apply for lawful permanent residence and eventually citizenship and whose current Special Immigrant Juvenile status does not expire) are not temporary residents whose presence is tied to a specific purpose of a defined period of time. Instead, the minor plaintiffs and putative class members in the instant action are U.S. citizens and/or on a path to U.S. citizenship and authorized to stay in the U.S. indefinitely.

*LULAC* is also distinguishable because the Sixth Circuit focused on the absence of harm to the plaintiffs, who were still eligible to receive driving certificates, which conferred driving privileges but not official identification. 500 F.3d at 532 (noting "the instant subclass of aliens hardly suffers any cognizable harm as a direct result of the classification"). Here, the minor plaintiffs and putative class members are denied any access to driver's licenses and state identification cards while they remain minors.

Plaintiffs correctly note that the minor plaintiffs and putative class members in the case *sub judice* "fit squarely into the Supreme Court caselaw applying strict scrutiny when a state law makes a classification on the basis of alienage. As in *Graham, Takahashi*, and *Nyquist* [discussed *infra*], minor Plaintiffs can show that they are similarly situated to their comparator group—other minors who are eligible to obtain driver's licenses under federal and state law because they are citizens or otherwise lawfully present in the U.S.—but are treated differently on the basis of their parents' alienage." (Pls' Mem. in Opp. at 16.)

The Supreme Court has repeatedly applied strict scrutiny to state classifications based on national origin and alienage, holding that "classifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny," and that "[a]liens as a class are a prime example of a 'discrete and insular' minority for whom such heightened judicial solicitude is appropriate." *Graham v. Richardson*, 403 U.S. 365, 372 (1971) (internal citation and quotation marks omitted). The Supreme Court has applied strict scrutiny to state laws that treat lawful permanent residents and other authorized immigrants differently than other similarly situated individuals. The *Graham* Court invalidated an Arizona law that limited access to welfare benefits only to citizens and lawful permanent residents who had resided in the U.S. for at least fifteen years. *Id.* at 376.

Similarly, in *Takahashi v. Fish & Game Comm.*, 334 U.S. 410, 420 (1948), the Supreme Court struck down a state's ban on the issuance of commercial fishing licenses to lawful resident aliens. The Court explained:

> The Fourteenth Amendment and the laws adopted under its authority thus embody a general policy that all persons lawfully in this country shall abide 'in any state' on an equality of legal privileges with all citizens under nondiscriminatory laws.

*Takahashi*, 334 U.S., at 420. And, in *Nyquist v. Mauclet*, 432 U.S. 1, 12 (1977), the Court applied strict scrutiny and found that that New York State college scholarship program requirement violated

15

the Equal Protection Clause because it limited awards only to U.S. citizens, refugees, or those who intended to seek U.S. citizenship when eligible.

Plaintiffs highlight that, while the question of discrimination against children based on the alienage or nationality of their parents are relatively rare, the Supreme Court has applied strict scrutiny to an Equal Protection Clause claim of a child who, as in the instant case, asserted discrimination on the basis of his parent's alienage and national origin, rather than his own. *Oyama v. California*, 332 U.S. 633, 640 (1948). In *Oyama*, the U.S.-citizen son of a Japanese father challenged a prohibition on land transfers between non-citizen fathers and their children that did not exist for land transfers from other fathers to their children. *Id.* at 636. The Supreme Court applied strict scrutiny to the son's claim of discrimination on the basis of his father's immutable characteristic, his Japanese nationality, holding: "the State has discriminated against [the American citizen son]; the discrimination is based solely on his parents' country of origin; and there is absent the compelling justification which would be needed to sustain discrimination of that nature." *Id.* at 640. *See also L.P. v. Comm'r, Ind. Dep't of Health*, 2011 U.S. Dist. LEXIS 8154, at *9 (S.D. Ind. Jan. 27, 2011) (enjoining state policy requiring the paternity affidavit used to establish paternity for children out of wedlock to contain both parents' Social Security numbers, on the ground that the policy discriminates against U.S.-citizen children whose parents lack lawful immigration status and cannot obtain such numbers).

And, other circuits have applied strict scrutiny to classifications that target aliens with a variety of types of lawful status that, similar to Plaintiffs in the instant case, are distinguishable from the temporary residents in *LULAC* whose authorized presence is limited in time or purpose. *See, e.g., Exodus Refugee Immigration, Inc. v. Pence*, 838 F.3d 902, 904 (7th Cir. 2016) (rejecting Indiana's proffered "compelling interest" in refusing to resettle refugees and upholding a district court decision that this refusal was a violation of the Equal Protection Clause and

targeted a suspect class of refugees, who are not lawful permanent residents but are nevertheless entitled to reside indefinitely in the United States); *Dandamudi v. Tisch*, 686 F.3d 66, 69-70 (2d Cir. 2012) (holding that a class of temporary work visa holders was subject to strict scrutiny because they were "aliens who have been lawfully admitted to reside and work in the United States" and noting that many of them had been in the U.S. for years and may eventually apply for and obtain permanent residence).

The Registrar's policy, which denies minors' licenses and state identification cards when their parents cannot serve as co-signers because they cannot present documents evincing their lawful immigration status, and prevents any other adult from serving as co-signer if the parent cannot do so, is a suspect classification that targets only those minors whose parents lack lawful status. It creates a distinction between American citizens who are Ohio minors with parents having lawful immigration status and those who do not, even though both groups are otherwise eligible for driver's licenses and state identification cards under Ohio state law and the REAL ID Act. As such, Plaintiffs have stated a viable claim that the BMV policy discriminates against the American citizen and non-citizen minors across Ohio who are otherwise eligible to obtain the driver's licenses and/or state identification cards and are unable to do so because of the national origin and immigration status of their parents. Therefore, Defendant is required to show that the policy is "necessary to further a compelling governmental interest and narrowly tailored to that end." *Fisher*, 133 S. Ct. at 2422.

## 2. State Interests

The Registrar presents two interests that he characterizes as legitimate, which he argues satisfies the burden of showing that the policy is rationally related to a legitimate state interest. First, the Registrar asserts that the state has a legitimate interest in verifying co-signer identification (including "legal presence" documents) for minor applicants because the co-signer

has liability for a minor's vehicle accident and the state must ensure the identity of the person assuming such liability. Second, the Registrar contends that it has a legitimate state interest in ensuring that an applicant has legal status in order to comply with the REAL ID Act.

Plaintiffs respond that Defendant's two proffered state interests are neither compelling nor legitimate. Plaintiffs maintain that "[b]oth interests fail to pass strict scrutiny and do not even pass muster under rational basis review because the BMV's policy of permitting only parents to co-sign and requiring co-signers to present documents showing lawful status is not rationally related to a legitimate state interest." (Pls' Mem. in Opp. at 17) (citing *Plyler*, 457 U.S. at 230, where the Court applied rational basis review to a class of undocumented children; *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1063-67 (9th Cir. 2014), finding unconstitutional state laws denying driver's licenses to recipients of Deferred Action for Childhood Arrivals; *Lewis v. Thompson*, 252 F.3d 567, 591-92 (2d Cir. 2001); striking down law that denied automatic Medicaid eligibility for U.S.-citizen children of alien mothers). While Plaintiffs' position with regard to whether the Registrar's stated interests survive a rational basis review is persuasive, that is not the analysis in which the Court must engage. As to the issue before the Court, that is, whether these stated interests pass muster under strict scrutiny, Defendant takes no position. This is understandable because, even accepting arguendo that the Registrar's stated interests are compelling, the policy is not narrowly tailored to those ends.

The first stated interest (verifying co-signer identification for minor applicants because the co-signer has liability for a minor's vehicle accident and the state must ensure the identity of the person assuming such liability) is not narrowly tailored to further the stated governmental interest because a parent can: 1) present bilingual identification verifying their identity such as a foreign passport or consular identity card, as Ms. Rodriguez Enamorado and Ms. Monjaraz did here; and 2) assume liability for a child's motor vehicle accidents regardless of whether that

parent has lawful immigration status. As Plaintiffs point out, the purpose of the co-signer requirement is to impute "[a]ny negligence, or willful or wanton misconduct" that is committed by the minor "when driving a motor vehicle upon a highway." Ohio Rev. Code § 4507.07(A). There is no state or federal law that prohibits a person without lawful immigration status from purchasing car insurance. Additionally, the Revised Code contains an exception to the imputation of liability on the adult co-signer if the minor "has proof of financial responsibility with respect to the operation of a motor vehicle owned by the minor or, if the minor is not the owner of a motor vehicle, with respect to the minor's operation of any motor vehicle, in the form and in the amounts required under Chapter 4509 of the Revised Code," which is defined as the minimum liability insurance coverage required of all Ohio drivers. *Id.* at §§ 4507.07(B); 4509.01(K).

The state contends that its policies protect Ohio drivers because:

> If a minor driver is involved in an accident, the co-signer has legally assumed liability for the minor driver, thus providing recourse for the other party. Verifying the legal presence of the co-signer protects both the BMV and other Ohio motorists by helping to ensure the co-signer can be located in the event of a minor's negligence.

(Reply at 4, ECF No. 30.)

This argument goes too far. There is *no* requirement that the parent assuming liability has (a) auto insurance covering the minor; or (b) proof that the parent is solvent. Requiring proof that a minor citizen's parent is also a citizen is not related to requiring a minor driver to be properly insured or solvent in the event of an accident. There is no protection of the public from a minor driver by denying the child of an alien a driver's license. The policy at issue is "not narrowly tailored" to the state's legitimate interest in protecting the public. A narrow, more effective policy would simply require proof of insurance.

Moreover, the Registrar requires minors to have a co-signer not only for a driver's license or a temporary instruction permit, but also for a state identification card. When a parent co-signs for her child's state identification card application, she does not assume any liability because the statute only contemplates liability for "driving a motor vehicle upon a highway." *Id.* § 4507.07(B). This further undermines the state's argument that a co-signer must be a parent with lawful immigration status in order for the parent to assume liability for accidents.

Defendant's second stated justification for his policy, that he has an interest in ensuring compliance with the REAL ID Act, fares no better. One of the requirements of the REAL ID Act is that an applicant show certain documents evincing lawful immigration status. Pub. L. No. 109-13 § 202(a); 119 Stat. 313; (49 U.S.C. § 30301 codified as note); 6 C.F.R. § 37.11. But the REAL ID Act does not impose requirements for co-signers of a driver's license application. Ohio would remain compliant with REAL ID even if it terminated the minor co-signer policy and allowed parents without lawful status or any other qualified adult to co-sign for the minor.

Consequently, the Court concludes that the Complaint raises the colorable claim that the BMV's policy that requires a parent or guardian to prove lawful immigration status in order to co-sign for the minor child if the parent is not a U.S. citizen is not narrowly tailored to meet the stated governmental interests and is arguable unconstitutional. Thus, Plaintiffs have stated a claim for violation of the Equal Protection Clause of the Fourteenth Amendment upon which relief can be granted.

## IV.

For the reasons set forth above, the Court **DENIES** Defendant's Motion to Dismiss for

Failure to State a Claim Upon Which Relief Can Be Granted.  (ECF No. 25.)

**IT IS SO ORDERED.**

8-2-2019
DATE

EDMUND A. SARGUS, JR.
CHIEF UNITED STATES DISTRICT JUDGE