**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| INTERCOMMUNITY JUSTICE AND | ) | |
| PEACE CENTER; Erlin Lorena RODRIGUEZ | ) | |
| ENAMORADO, individually and as next | ) | |
| friend of J.G.R.; Maria MONJARAZ, | ) | |
| individually and as next friend of A.M.; and | ) | No. 2:18-cv-1247 |
| MARIA CABRERA, individually and as | ) | |
| next friend of K.I.A., on behalf of themselves | ) | Judge Edmund A. Sargus, Jr. |
| and all others similarly situated, | ) | |
| | ) | Magistrate Judge Kimberly A. Jolson |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Charles NORMAN, Registrar, Ohio Bureau of | ) | |
| Motor Vehicles, in his official capacity, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Plaintiffs Intercommunity Justice and

Peace Center, Erlin Lorena Rodriguez Enamorado, J.G.R., Maria Monjaraz, A.M., Maria

Cabrera, and K.I.A. hereby move for summary judgment on the ground that there is no genuine

issue of disputed material fact and that they are entitled to judgment as a matter of law on their

claim of relief under the Equal Protection Clause of the Fourteenth Amendment. In support of

this motion, Plaintiffs submit the accompanying memorandum of law and supporting exhibits.

Respectfully submitted,

By:  */s/ Emily M. Brown*
Emily M. Brown (0092553)
Kathleen C. Kersh (0091198)

1

Mark R. Heller (0027027)
Eugenio Mollo, Jr. (0081860)

Advocates for Basic Legal Equality, Inc.
130 West Second St., Suite 700E
Dayton, Ohio 45402
937-535-4408 (phone)
937-535-4600 (fax)
ebrown@ablelaw.org
kkersh@ablelaw.org
mheller@ablelaw.org
emollo@ablelaw.org

Caroline Gentry (0066138)
Ana P. Crawford (0090581
David P. Shouvlin (0066154)
Porter Wright Morris & Arthur LLP
One South Main Street, Suite 1600
Dayton, OH 45402
937-449-6748 (phone)
937-449-6820 (fax)
cgentry@porterwright..com
acrawford@porterwright.com
dshouvlin@porterwright.com

*Attorneys for Plaintiffs*

## MEMORANDUM IN SUPPORT

A putative class of 16- and 17-year old Ohio residents—most of whom were born in this country and are U.S. citizens—brings this action against Bureau of Motor Vehicles ("BMV") Registrar Charles Norman to challenge the BMV's discriminatory policy that denies driver's licenses to otherwise-eligible minors.

Obtaining a temporary instruction permit at age 15 and then a driver's license at age 16 is a familiar rite of passage for teenagers across Ohio. It can also be critical to gaining independence, supporting oneself and assisting one's family financially, and attending school and extracurricular activities. However, thousands of U.S.-citizen and noncitizen minors across Ohio who are otherwise eligible to obtain these licenses are unable to do so because of the national origin and immigration status of their parents. The BMV has enacted a discriminatory policy that requires a parent or legal guardian who is not a U.S. citizen to prove her lawful immigration status in order to co-sign the minor child's application. When a parent or guardian cannot provide such documentation, BMV policy also prohibits any other adult from serving as a co-signer. This policy denies or delays the issuance of driver's licenses and identification cards to otherwise-eligible individuals solely on the basis of a minor's parents' alienage and national origin and, consequently, violates those minors' right to equal protection of the laws. Plaintiffs and putative class members seek injunctive and declaratory relief against Defendant and the cessation of this discriminatory policy.

The central question in this case is whether the BMV may enact a policy that facially discriminates against Plaintiffs and putative class members by not allowing their parents to serve as cosigners—a classification on the basis of their parents' alienage and national origin. Because the facts surrounding the application of the policy are not in dispute, Plaintiffs now move for

3

summary judgment. In its opinion and order denying the BMV's motion to dismiss, this Court found that strict scrutiny applies to the BMV's classification based on alienage and national origin, and because the discovery in this case has revealed no compelling state interest (or even a legitimate one) to justify this policy, the Court should grant Plaintiffs' motion for summary judgment on their Equal Protection Clause claim. *See* Op. and Order, Doc. 49 at 16.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs include: 1) three Ohio residents[1] who by virtue of their ages are eligible to apply for a temporary instruction permit identification card ("TIPIC") and, after satisfying driver's education requirements and passing a driving test, a driver's license; 2) each of the residents' sole custodial parent, who by virtue of their immigration status cannot cosign for their

---

[1] In the last few months, A.M. and J.G.R. have turned 18 and are now eligible to get a driver's license without a co-signer. *See* Ex. 2, Monjaraz Decl., at ¶ 3; Ex. 3 Rodriguez Enamorado Decl., at ¶ 2. K.I.A. is currently a minor, and at the time of the filing for motion for class certification on December 13, 2018, both A.M. and J.G.R. were minors. *See Wilson v. Gordon*, 822 F.3d 934, 945 (6th Cir. 2016) (holding that a claim that was live at the time of filing for class certification is not mooted if it is "inherently transitory."); *Unan v. Lyon*, 853 F.3d 279, 287 (6th Cir. 2017). The claims of minor Plaintiffs in this case are inherently transitory because all minor plaintiffs and class members turn 18 within two years of becoming eligible for a driver's license. *See* Ohio Rev. Code § 4507.071(A). The claim is thus "so transitory that it would likely evade review by becoming moot before the district court can rule on class certification." *Wilson*, 822 F.3d at 945. Second, it is clear that "other class members are suffering the injury." Moreover, the policy applies classwide to all eligible 16- and 17-year-old minors whose parents lack lawful immigration status and thus it is clear that other class members are suffering the injury. Plaintiffs have also shown diligence in filing the motion for class certification only nine days after filing the amended complaint (Doc. 11, 15), proceeding with class and merits discovery on an expedited schedule, and requesting expedited adjudication of the class certification motion, factors which courts cite in determining whether plaintiffs may avail themselves of the "inherently transitory" exception. *See, e.g.*, *Banks v. National Collegiate Athletic Assoc.*, 977 F.2d 1081, 1085-86 (7th Cir. 1992), *cert. denied*, 508 U.S. 908 (1993); *Brunet v. City of Columbus*, 1 F.3d 390, 400 (6th Cir. 1993). Finally, the Court need not reach the issue of whether A.M. and J.G.R.'s claims are live, because the claims of K.I.A. and organizational plaintiff IJPC remain live at this time.

children's driver's license applications; and 3) organizational plaintiff Intercommunity Justice and Peace Center ("IJPC"), a Cincinnati-based nonprofit organization with a mission of promoting the rights of its immigrant members, developing leadership ability in its members (who include immigrant youth and the U.S.-citizen children of immigrants), and counteracting discrimination against its members.

Plaintiffs have brought this lawsuit on behalf of the following putative class:

All 16- and 17-year-olds residing in Ohio who are U.S. citizens or otherwise "legally present," and whose parents are non-citizens and do not possess the required USCIS documentation to co-sign the minors' driver's license or state identification card applications.

Am. Compl., Doc. 11, ¶ 101; Mot. for Class Cert., Doc. 15 at 4.

K.I.A., A.M., J.G.R., and many of the members of IJPC have been unable to obtain a driver's license before their eighteenth birthday because their parents are undocumented and BMV policy prohibits them from co-signing their children's driver's license applications. Ex. 1, Deputy Registrar Procedure Manual: Proof of Identity at 5-6, 8 (stating that cosigners for minor U.S. citizens, permanent residents, and temporary residents must all show Ohio credential or proof of the five elements,[2] which includes "legal presence," or a non-Ohio credential with proof of Social Security number); Statement of Stipulated Facts, Doc. 23 at ¶ 10; 30(b)(6) Deposition Tr. of BMV: Derek Casper Vol I ("Casper BMV Dep."), Doc. 40 at 74:21-75:17 (same). BMV policy further prohibits an undocumented parent from designating a "responsible person" to co-sign for the child's application, a workaround provision available under Ohio law. Ohio Rev. Code § 4507.07(A); Driver Manual (attachment to Statement of Stipulated Facts), Doc. 23-2 ("A

---

[2] The five elements are: (1) Full legal name; (2) Date of birth; (3) Social security number; (4) Street address of the person's principal residence in the state of Ohio; and (5) Status as a citizen, permanent resident, or temporary resident of the United States (termed as "legal presence" by the BMV). Ohio Adm. Code § 4501:1-1-21(C).

cosigner must be asked if he or she is a legal parent or guardian of the applicant but is not required to provide documentation proving the relationship or guardianship.").

Defendants have stipulated that if the allegations in the amended complaint are true, under current BMV policy, minor Plaintiffs K.I.A., A.M., and J.G.R. all meet the BMV's "legal presence" requirement. Statement of Stipulated Facts, Doc. 23 at ¶ 12. Therefore, each minor Plaintiff's only obstacle to obtaining a temporary permit and a license is an inability to obtain a co-signer permitted by the policy.

**Procedural History:**

Defendant filed a motion to dismiss Plaintiffs' complaint on February 25, 2019, which Plaintiffs opposed. Docs. 25, 29. The Court denied Defendant's motion to dismiss on August 2, 2019. Doc. 49. Plaintiffs also moved for class certification on December 13, 2018 and briefing on the motion was stayed pending discovery. Doc. 15. Pursuant to the case scheduling order, Plaintiffs later filed a supplemental motion for class certification on July 15, 2019, to which Defendant waived its opposition, and which remains pending. Docs. 43, 54. The parties have also filed a Statement of Stipulated Facts for the purpose of dispositive motions. Doc. 23.

**Ohio Law and BMV Policies:**

The Ohio Revised Code establishes the requirements for the issuance of driver's licenses to Ohio residents. *See generally* Ohio Rev. Code § 4507. Ohio requires a driver's license applicant to be eighteen years of age or older, except that a person who is at least sixteen years of age and has held a temporary instruction permit identification card ("TIPIC") for a period of at least six months may apply for and receive a probationary license. *Id.* § 4507.071(A). Pursuant to BMV regulations, all applicants for a license or a TIPIC must

present documents sufficient to show five elements: the person's "(1) Full legal name; (2) Date of birth; (3) Social security number; (4) Street address of the person's principal residence in the state of Ohio; and (5) Status as a citizen, permanent resident, or temporary resident of the United States." Ohio Adm. Code § 4501-1-1-21(C).

In order to show the fifth element, commonly called "legal presence" in BMV parlance, applicants must establish "legal presence" in the United States by submitting "original and valid" U.S. Citizenship and Immigration Services ("USCIS") documents "showing the dates of legal presence." *Id.* § 4501:1-1-21(G)(6). The acceptable identification documents required by the Ohio Administrative Code are the same for TIPIC applicants as for driver's license applicants. *See id.* § 4501:1-1-21(A).

The Ohio Revised Code further provides that for any minor under eighteen years of age to receive a probationary license, the minor's application must be "signed by one of the minor's parents, the minor's guardian, another person having custody of the applicant, or, if there is no parent or guardian, a responsible person who is willing to assume the obligation imposed under this section." Ohio Rev. Code § 4507.07(A).[3] The co-signer "shall present identification establishing that the adult is the individual whose signature appears on the application." *Id.* The Revised Code further provides that "the [BMV] registrar shall prescribe, by rule, the types of identification that are suitable for" this purpose. *Id.* Co-signers are required by regulation to

---

[3] Ohio Revised Code §§ 4507.50 and 4507.51 govern the issuance of state identification cards. An identification card is not valid for the purpose of operating a motor vehicle, and there is no age requirement to obtain one. *Id.* at § 4507.52(A). The Revised Code requires that, like a TIPIC or a driver's license application, a minor applicant for an identification card have a cosigner. *Id.* § 4507.51(A)(1). *See also* Driver Manual (attachment to Statement of Stipulated Facts), Doc. 23-2, PageID 267 ("Cosigner Requirements for all types of Ohio Credentials").

present this identification when co-signing an application for either a temporary instruction permit or a driver's license. *See* Ohio Adm. Code § 4501:1-1-19(C).

However, the Revised Code and the Administrative Code are silent on the question of what documents a cosigner (as opposed to an applicant) must present to the Deputy Registrar in order to "establish[] that the adult is the individual whose signature appears on the application." Ohio Rev. Code § 4507.07(A).  But the BMV Driver Manual has implemented a policy requiring that a cosigner "present proof of identity by presenting an Ohio credential or proof of the five elements. If the cosigner is not an Ohio resident, an out-of-state credential and proof of [Social Security Number] is acceptable as proof of identity."  Driver Manual (attachment to Statement of Stipulated Facts), Doc. 23-2, PageID 267.  The five elements referenced herein are those laid out in the Ohio Administrative Code, including "legal presence."  Ohio Adm. Code § 4501:1-1-21(C), (G).

The Revised Code and Administrative Code are also silent on the question of when Deputy Registrars may consider there to be "no parent or guardian," and thus allow another "responsible person" to co-sign.  Ohio Rev. Code § 4507.07(A).  The BMV has interpreted the policy to allow only a parent or legal guardian to be the co-signer unless the minor is emancipated.  Driver Manual (attachment to Statement of Stipulated Facts), Doc. 23-2, PageID 268 ("A cosigner must be asked if he or she is a legal parent or guardian of the applicant but is not required to provide documentation proving the relationship or guardianship.").

The BMV designee acknowledged in a Rule 30(b)(6) deposition that the BMV does not track minor applicants who, like individual Plaintiffs, have been turned away from Deputy Registrars due to not having a cosigner with proper legal presence documentation. 30(b)(6) Deposition Tr. of BMV: Derek Casper Vol I ("Casper BMV Dep."), Doc. 40, at 138, 196-97.

8

**Factual Background:**

Plaintiff A.M., a U.S. citizen and resident of Toledo, turned 18 last month but at the time of the filing of the lawsuit and the motion for class certification was 17 years old. Declaration of Maria Monjaraz ("Monjaraz Decl."), Ex. 2, at ¶¶ 2-3; A.M. birth certificate, Doc. 43-2 (under seal[4]).  In 2017, he attempted to apply for an Ohio TIPIC using his mother as his co-signer.  Monjaraz Decl., Ex. 2, at ¶¶ 5-6.  Ms. Monjaraz presented her valid Mexican consular identity card, but the Deputy Registrar informed them that Ms. Monjaraz could not serve as A.M.'s co-signer because she did not have a valid Ohio license.  *Id.* at ¶¶ 7-8.  Ms. Monjaraz is unable to obtain an Ohio license or U.S. identity document because she does not have a valid immigration status.  *Id.* at ¶ 10.  Jacquelin Ocampo, a U.S.-citizen friend of Ms. Monjaraz, also accompanied A.M. and Ms. Monjaraz to the Deputy Registrar that day and told the staff that she was willing to co-sign the application, but Deputy Registrar staff refused to allow her to co-sign because she is not A.M.'s parent or legal guardian.  *Id.* at ¶¶ 8-9.

At the time of the filing of this lawsuit and the motion for class certification, J.G.R. was a minor.  Declaration of Erlin Lorena Rodriguez Enamorado ("Rodriguez Enamorado Decl."), Ex. 3, at ¶ 2; J.G.R. birth certificate, Doc. 43-3 (under seal); J.G.R. approval notice for SIJ status, Doc. 43-4 (under seal).  She was eligible for an Ohio driver's license or state identification card because she resides in Ohio and holds special immigrant juvenile ("SIJ") status.[5]  Declaration of Janeth Gomez Rodriguez (Gomez Rodriguez Decl."), Ex. 4, at ¶¶ 1-3;

---

[4] The Court previously granted Plaintiffs' motion to file the birth certificates of the three minor Plaintiffs, as well as J.G.R.'s approval notice for special immigration juvenile status from U.S. Citizenship and Immigration Services, under seal.  Docs. 43-1; 43-2; 43-3; 43-4; *see also* Doc. 44, Order Granting Motion to File Documents Under Seal.

[5] Certain unmarried noncitizens under 21 years of age who are present in the United States may obtain SIJ status if they meet the following criteria: (a) a juvenile court has declared them a dependent of the state and found that reunification with at least one of their parents is not viable

Rodriguez Enamorado Decl., Ex. 3, at ¶¶ 2, 5;. J.G.R.'s mother, Plaintiff Erlin Rodriguez

Enamorado, accompanied her daughter to the Deputy Registrar to serve as a co-signer on her

state identification card application because J.G.R. was a minor. *Id.* at ¶ 6; Gomez Rodriguez

Decl., Ex. 4, at ¶ 6. Ms. Rodriguez Enamorado presented her valid Honduran passport, but the

Deputy Registrar informed them that Ms. Rodriguez Enamorado could not serve as J.G.R.'s co-

signer because she did not have a valid Ohio license. *Id.* at ¶ 7; Rodriguez Enamorado Decl., Ex.

3, at ¶ 7. Ms. Rodriguez Enamorado is unable to obtain an Ohio license because she does not

have a valid immigration status. *Id.* at ¶ 8. J.G.R., this time without her mother, returned to the

same BMV Deputy Registrar location a week later with Jorge Pagon, a family friend who

presented an Ohio-issued photo ID and proof of lawful immigration status. *Id.* at ¶ 9; Gomez

Rodriguez Decl., Ex. 4 at ¶ 9. The East Broad Street BMV Deputy Registrar again refused to

issue J.G.R. a state identification card, stating that BMV policy prohibited Mr. Pagon from

serving as J.G.R.'s co-signer because he was not her parent or legal guardian. *Id.*

       Plaintiff K.I.A., a 17-year-old U.S. citizen and resident of Cincinnati who is a

member of IJPC's YES program, is unable to apply for an Ohio driver's license because she does

not have a custodial parent who can serve as her co-signer. Declaration of Maria Cabrera

("Cabrera Decl."), Ex. 5, ¶¶ 5-6, 9-10, 16-17; K.I.A. birth certificate, Doc. 43-1 (under seal).

K.I.A.'s only custodial parent is her mother, who does not have a valid immigration status and

therefore cannot obtain an Ohio license or other U.S. identity document. Cabrera Decl., Ex. 5, at

---

due to abuse, neglect or abandonment; and (b) a juvenile court has declared that it is not in their
best interests to be returned to their country of nationality or last habitual residence. 8 U.S.C. §
1101(a)(27)(J)); Statement of Stipulated Facts, Doc. 23 at ¶ 9. Once an individual attains SIJ
status, the Immigration and Nationality Act allows them to remain in the United States
indefinitely and adjust status to lawful permanent residence when a visa becomes available. 8
U.S.C. § 1255(a), (g)-(h).

¶¶ 2, 9. At age 17, K.I.A. is precluded from getting a driver's license because of her mother's immigration status. *Id.* at ¶¶ 9-10. Before K.I.A. was even eligible for a TIPIC, Ms. Cabrera had encountered the BMV's co-signer policy because K.I.A.'s older sister, Esther, who is now over 18 years old and has been a U.S. citizen since birth, tried to obtain a TIPIC at the Deputy Registrar in Sharonville, Ohio when Esther was 16 years old. *Id.* at ¶¶ 4, 7. When Esther and Ms. Cabrera went to the Deputy Registrar so that Esther could apply for a TIPIC, Ms. Cabrera presented a valid Mexican passport and valid Mexican consular identity card, but the Deputy Registrar rejected the documents. *Id.* at ¶ 8. Accordingly, she never attempted to take K.I.A. to a Deputy Registrar to apply for a TIPIC because she knew that pursuant to BMV policy K.I.A. could not obtain a TIPIC or a license while she was a minor. *Id.* at ¶ 10.

The Intercommunity Justice and Peace Center is a nonprofit advocacy and educational organization whose mission is to combat discrimination against immigrants and advance the integration of immigrants and their families. Declaration of Allison Reynolds-Berry ("Reynolds-Berry Decl."), Ex. 6, at ¶¶ 2, 4-5. One of its core programs, Youth Educating Society ("YES"), is a membership-based organization of youth ages 14 to 25 who are immigrants or the children of immigrants. *Id.* at ¶¶ 6, 8. YES empowers its members to advocate for immigrant rights and to tell their personal stories in public forums. *Id.* at ¶¶ 6, 8. At least 12-15 current YES members, including named Plaintiff K.I.A., are personally affected by the BMV's minor co-signer policy because they are 16 or 17 years old and eligible to obtain driver's licenses but have parents without lawful immigration status. *Id.* at ¶¶ 9, 10, 14; Declaration of Samantha Searls ("Searls Decl."), Ex. 7 at ¶ 12; Cabrera Decl., Ex. 5 at ¶¶ 16-17. Moreover, many YES members and their families are afraid to come forward themselves to join this lawsuit because to do so would be to publicly announce their parents' undocumented status, given that their parents would have

11

to be plaintiffs in the lawsuit.  Reynolds-Berry Decl., Ex. 6, at ¶ 14.  Therefore, IJPC has

representative standing in this lawsuit to represent its members who are directly affected by the

policy.  IJPC also has direct standing in the suit on the basis that it has been harmed by the

BMV's policy because it has had to divert significant resources—including staff time, mileage,

and volunteer time—to transport its members who cannot obtain drivers' licenses, and because

its organizational mission has been frustrated by the BMV's policy.  Reynolds-Berry Decl., Ex. 6

at ¶¶ 11-13, 15; Searls Decl., Ex. 7, at ¶¶ 7-11, 13-15; Ex. 8, mileage statements of IJPC staff

drivers; Ex. 9, IJPC's Resp. to Def's Interrog. No. 2 (list of IJPC/YES drivers who have

transported members who cannot obtain licenses).

## II.  LEGAL STANDARD FOR SUMMARY JUDGMENT

A court shall grant summary judgment "if the movant shows that there is no genuine

issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a). In adjudicating a motion for summary judgment, "facts must be viewed in the light

most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."

*Scott v. Harris*, 550 U.S. 372, 380 (2007). The party seeking summary judgment bears the initial

burden of demonstrating that there is no genuine dispute as to any material fact. *See Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate "where the record

as a whole could not lead a rational trier of fact to find for the nonmoving party."  *Cummings v.*

*City of Akron*, 418 F.3d 676, 682 (6th Cir. 2005) (citation, quotation marks and alterations

omitted).  If the movant carries its burden of showing that there is no genuine dispute of material

fact, then the nonmovant must demonstrate by affidavits, depositions, answers to interrogatories

and admissions that such a dispute exists. *Celotex*, 477 U.S. at 324.

### III.    PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR EQUAL PROTECTION CLAUSE CLAIM

The BMV's policy facially discriminates against minor applicants for driver's license and state identification cards on the basis of their parents' alienage and national origin because it interprets the Ohio Revised Code's cosigner requirement to allow only a parent or legal guardian to cosign a minor's application and requires that parent or legal guardian to have lawful immigration status.[6]  There are no disputed issues of material fact as to the existence of the policy and its effect on Plaintiffs, and, therefore, Plaintiffs are entitled to judgment as a matter of law.

The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike" under the law.  *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  If a state does not burden a fundamental right or target a suspect class, it will withstand constitutional scrutiny so long as it bears a rational relationship to a legitimate state interest.  *Vacco v. Quill*, 117 S.Ct. 2293, 2297 (1997).  However, if a state law or policy makes a classification based on race, national origin, or alienage, it violates the Equal Protection Clause unless the state can demonstrate that the policy is "necessary to further a compelling governmental interest" and "narrowly tailored to that end." *Fisher v. Univ. of Tex. At Austin*, 133 S. Ct. 2411, 2422 (2013) (internal quotations omitted).

---

[6] Plaintiffs also note that the BMV's interpretation of the statute to permit only parents to cosign is plainly erroneous because subsection (D) of the provision, which addresses the co-signer surrendering a license or TIPIC to the Deputy Registrar, provides for the minor to obtain a new license "if the minor is able to produce another parent, guardian, other person having custody of the minor, or other adult, and that adult is willing to assume the liability imposed under division (B) of this section."  Ohio Rev. Code § 4507.07(D).  This language demonstrates that the statute contemplates that another adult may co-sign the application and does not require a parent or legal guardian to do so.

13

A key characteristic of a suspect class is that it be based on an "immutable characteristic determined solely by the accident of birth." *Frontiero v. Richardson,* 411 U.S. 677, 684-88 (1973). As Plaintiffs' expert witness and immigration and federalism scholar Pratheepan Gulasekaram, points out, a parent's immigration status is indeed a characteristic "that plaintiffs cannot change or control." Expert Report and Declaration of Pratheepan Gulasekaram ("Gulasekaram Decl."), Ex. 10 at ¶ 36. Two related and long-established principles in equal protection jurisprudence—the application of heightened scrutiny to discrimination against suspect classes and to discrimination against children based on "the legal status, limitations, or transgressions of their parents"—require the application of strict scrutiny here. *Id.* at ¶ 34.

In its Opinion and Order denying Defendant's Motion to Dismiss, this Court has already determined that the BMV policy, as written, makes a classification on the basis of alienage and national origin and, accordingly, that strict scrutiny applies to Plaintiffs' Equal Protection Clause claim. The Court held:

> The Registrar's policy, which denies minors' licenses and state identification cards when their parents cannot serve as co-signers because they cannot present documents evincing their lawful immigration status, and prevents any other adult from serving as co-signer if the parent cannot do so, is a suspect classification that targets only those minors whose parents lack lawful status. It creates a distinction between American citizens who are Ohio minors with parents having lawful immigration status and those who do not, even though both groups are otherwise eligible for driver's licenses and state identification cards under Ohio state law and the REAL ID Act. As such, Plaintiffs have stated a viable claim that the BMV policy discriminates against the American citizen and non-citizen minors across Ohio who are otherwise eligible to obtain the driver's licenses and/or state identification cards and are unable to do so because of the national origin and immigration status of their parents. Therefore, Defendant is required to show that the policy is "necessary to further a compelling government interest and narrowly tailored to that end." *Fisher*, 133 S. Ct. at 2422.

14

Op. and Order, Doc. 49 at 17. Because the Court has already determined at the motion-to-dismiss stage that Defendant's policy, on its face, targets a suspect class[7] on the basis of national origin and that strict scrutiny applies here, Plaintiffs ask the Court to consider whether Defendant's purported state interests meet this exceedingly demanding threshold. Although Plaintiffs contended in their response in opposition to Defendant's motion to dismiss that the state interests articulated in the motion did not withstand strict scrutiny, and the Court agreed that Plaintiffs had stated a claim with respect to their allegations that the policy was not narrowly tailored to a compelling state interest. Op. and Order Doc. 49 at 17. With the benefit of discovery Plaintiffs now turn to the record evidence in the case, which shows that Defendant lacks any justification for its policy, much less a compelling and narrowly tailored one.

A. **Defendant, through his Rule 30(b)(6) designee, admitted in deposition that the BMV does not know why there is a requirement for a cosigner to show proof of legal presence, when such a requirement was implemented, and what the rationale for the implementation was at the time.**

Earlier in this litigation, Defendant presented two state interests that purportedly justified its co-signer policy, both of which Defendant argued would satisfy at least the lower burden of showing that the policy is rationally related to a legitimate state interest. *Vacco*, 117 S.Ct. at 2297; Def's Mot. to Dismiss, Doc. 25 at 18; Reply, Doc. 30 at 4-5. In its previous opinion denying Defendant's motion to dismiss, the Court found that even assuming *arguendo* that the

---

[7] "[T]he immigration status of the minor's parent is irrelevant to defining the discriminated class for purposes of applying heightened judicial scrutiny under equal protection analysis." Ex. 10, Gulasekaram Decl., at ¶ 24. *See also Ruiz v. Robinson*, 892 F. Supp. 2d 1321, 1330 (S.D. Fla. 2012) (striking down state policy of denying in-state tuition to applicants based on the immigration status of the applicants' parents, and rejecting the state's attempt to focus the equal protection inquiry on the legal status of the applicants' parents). The appropriate class is the minors themselves, who are all U.S. citizens or lawfully present non-citizens.

interests were compelling, neither of them is narrowly tailored to advance a compelling state

interest.  Op. and Order, Doc. 49 at 18.  Discovery in the case has yielded no evidence to show

that either interest is narrowly tailored to a compelling interest; in fact, in a Rule 30(b)(6)

deposition, the BMV's designee, Derek Casper, acknowledged that no one at the BMV even

knows why there is a requirement for cosigners to show legal presence.

> Q. Okay. And do you know why there is a requirement for a cosigner to show proof of
> legal presence?
> A. I do not.
>
> Q. Does anyone at the BMV that you talked to -- has anyone at the BMV that you've
> talked to articulated why that's necessary?
> A. No.

Casper BMV Dep., Vol II, Doc. 41 at 222:7-14.

> Q. And nobody that you've talked to at the BMV about this issue in preparation for today
> could tell you what the reason for having that policy was?
> A. That's correct.

*Id.* at 223: 16-20; *see also* Ex. 12, Def.'s Resp. to Pls.' Interrogs. at 6 ("Interrogatory No. 9: On

what date did the BMV first begin to require cosigners of minor's applications for an Ohio

credential to present proof of legal presence? ANSWER: Unknown.").

Under Federal Rule of Civil Procedure 30(b)(6), an organization must designate an

individual "to testify on its behalf . . . about information known or reasonably available to the

organization."  The Rule 30(b)(6) designee "represents the corporation's position on the noticed

topics" and the corporation "has a duty under Rule 30(b)(6) to provide a witness who is

knowledgeable in order to provide binding answers on behalf of the corporation."  *United States*

*ex rel. Frye v. Health Alliance of Greater Cincinnati*, No. 1:03-cv-167, 2009 U.S. Dist. LEXIS

122533, at *5 (S.D. Ohio Nov. 20, 2009) (internal citations omitted).

Because Mr. Casper conceded that there was no reason for the policy, the BMV cannot now argue that they have even legitimate, much less compelling, reasons for the policy. Case law indicates as much. The Sixth Circuit has noted that "for purposes of equal protection, we must assume that the state's stated purposes are the actual ones, unless those purposes 'could not have been the goal of the legislation.'" *McNeilus Truck & Mfg. v. State ex rel. Montgomery*, 226 F.3d 429, 440 (6th Cir. 2000) (quoting *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 463 n.7 (1981)). Accordingly, the BMV cannot invent a purpose during litigation that its own Rule 30(b)(6) designee did not raise in deposition. And a court cannot be expected to uphold a law—under any standard, even the relatively relaxed rational basis review—if they were not "grounded in a sufficient factual context for [the court] to ascertain some relation between the classification and the purpose it served." *Romer v. Evans*, 517 U.S. 620, 632-33 (1996). Here, the BMV cannot articulate any reason for the implementation of the policy and therefore it cannot show any factual context that would allow the court to see a relation between the classification and its purpose.

**B.** **Even if Defendant had not already conceded that its policy advances no state interest, neither of the two state interests proffered by Defendant in its earlier briefing is compelling, nor even legitimate. Moreover, this Court has already found that the two interests are not narrowly tailored to advance a compelling state interest, and Defendants can point to no evidence uncovered in discovery that merit a different conclusion.**

The Court previously found in its opinion denying Defendant's motion to dismiss that "even accepting arguendo that the Registrar's stated interests are compelling, the policy is not narrowly tailored to those ends." Op. and Order, Doc. 49 at 18. In its previous briefing, the BMV asserted that the state has a legitimate interest in verifying co-signer identification (including "legal presence" documents) for minor applicants because the co-signer has liability for a minor's vehicle accident and the state must ensure the identity of the person assuming such

liability.  Mot. to Dismiss, Doc. 25 at 18.  Second, the BMV asserted that it has a legitimate state
interest in ensuring that an *applicant* has legal status in order to comply with the REAL ID Act.
*Id.*  Nothing in discovery has uncovered any evidence upon which Defendant can rely to show
that these interests are compelling nor that the policy is narrowly tailored to advance those
interests.

### 1.  First purported interest: verifying the co-signer's identity for liability purposes

This Court has already rejected Defendant's first purported interest—that cosigners must
present proof of legal presence because the cosigner has liability for a minor's vehicle accident if
the minor is underinsured or uninsured, finding:

> There is *no* requirement that the parent assuming liability has (a) auto insurance covering
> the minor; or (b) proof that the parent is solvent.  Requiring proof that a minor citizen's
> parent is also a citizen is not related to requiring a minor driver to be properly insured or
> solvent in the event of an accident.  There is no protection of the public from a minor
> driver by denying the child of an alien a driver's license.  The policy at issue is "not
> narrowly tailored" to the state's legitimate interest in protecting the public.  A narrow,
> more effective policy would simply require proof of insurance.
>
> Moreover, the Registrar requires minors to have a co-signer not only for a driver's license
> or a temporary instruction permit, but also for a state identification card.  When a parent
> co-signs for her child's state identification card application, she does not assume any
> liability because the statute only contemplates liability for "driving a vehicle upon a
> highway."  *Id.* § 4507.07(B).  This further undermines the state's argument that a co-
> signer must be a parent with lawful immigration status in order for the parent to assume
> liability for accidents.

Op. and Order, Doc. 49 at 19-20.  *See also* Ohio Rev. Code § 4507.51(A)(1) (requiring co-signer
for minor applicant for state identification card).  This interest is thus not narrowly tailored to a
compelling state interest because a parent can: 1) present bilingual identification verifying their
identity such as a foreign passport or consular identity card, as Ms. Monjaraz and Ms. Rodriguez
Enamorado did, Monjaraz Decl., Ex. 2 at ¶ 7; Rodriguez Enamorado Decl., Ex. 3 at ¶ 7; and 2)
assume liability for a child's motor vehicle accidents regardless of whether that parent has lawful

immigration status, because persons without lawful immigration status are not prohibited by law from purchasing car insurance. Indeed, Plaintiffs' expert witness points to several other states with cosigner requirements for minors that do not require the adult cosigner to show proof of lawful presence but instead require notarized signatures and/or various forms of identity documents that do not necessarily evince lawful presence. Ex. 10, Gulasekaram Decl., at ¶ 56.

Moreover, the BMV confirmed in its Rule 30(b)(6) deposition that all minor driver's license applicants are required to sign Form 3135, Financial Responsibility, confirming that *they* (not the cosigner) have proof of insurance or other financial responsibility. Ex. 13, BMV 3135 (instructions); Ex. 14, BMV 3135 (form); Casper BMV Dep. Vol II, Doc. 41 at 229:3-230:9. The BMV further confirmed that if a minor attests to having financial responsibility, defined as the minimum liability coverage mandated by state law, the cosigner does not assume any liability. Casper BMV Dep. Vol II, Doc. 41 at 233:12-235:9. *See also* Ohio Rev. Code §§ 4507.07(B); 4509.01(K) (exception to imputation of liability of an adult co-signer if the minor has the minimum liability insurance coverage which is required of all Ohio drivers). Additionally, the BMV could not point to a single instance where a cosigner had been held liable for a minor's negligent or reckless driving. Casper BMV Dep. Vol II, Doc. 41 at 240:11-242:22.

Accordingly, the BMV can point to no evidence that its interest in verifying the co-signer's identity for liability purposes is compelling, nor that its policy is narrowly tailored to advance that interest.

**2. Second purported interest: ensuring lawful status of the co-signer in order to comply with the REAL ID Act**

In its denial of Defendant's motion to dismiss, the Court also already rejected Defendant's second purported interest. Op. and Order, Doc. 49 at 20. Moreover, the BMV's

Rule 30(b)(6) designee specifically acknowledged in his deposition that compliance with the REAL ID Act is not the purpose of the policy to require cosigners to present legal presence documents.  Casper BMV Dep., Vol I, Doc. 40 at 76:19-22 (Q: The Real ID Act isn't the basis for BMV's requirements for cosigners to present certain legal presence documents? A: Correct.).  He also admitted that the BMV is aware that the REAL ID Act is silent regarding any requirements for cosigners.  *Id.* at 76:11-14 ("Q.  And the Real ID Act itself doesn't contain anything about cosigner requirements for minors specifically, right? A.  Correct.").

The REAL ID Act is a federal statute that sets minimum standards for state driver's licenses and identification cards to be accepted for official purposes.  Pub. L. No. 109-13 § 202(a); 119 Stat. 313; (49 U.S.C. § 30301 codified as note); 6 C.F.R. § 37.11.  One of these requirements is that an applicant show certain documents evincing lawful immigration status. *Id.* at § 202(c)(2)(B).  But the REAL ID Act does not impose requirements for *co-signers* of a driver's license application, which the Court noted in its previous opinion, stating that "Ohio would remain compliant with REAL ID even if it terminated the minor co-signer policy and allowed parents without lawful status or any other qualified adult to co-sign for the minor."  Op. and Order, Doc. 49 at 20.

And Defendant's previous argument in its motion to dismiss that "the Registrar adopted a policy to treat a co-signer as a co-applicant for the purposes of obtaining a probationary driver's license" is not supported by the record.  Def. Mot. to Dismiss, Doc. 25 at 9.  The Deputy Registrar Procedure Manual is replete with examples of different requirements for cosigners and applicants (*see* Ex. 1, Deputy Registrar Procedure Manual at 1-8; Casper BMV Dep. Vol I, Doc. 40 at 77:22-79:5), and the BMV has acknowledged that nowhere in the Driver Manual or the Revised Code does it state that a co-signer is treated as a "co-applicant."  Casper BMV Dep. Vol

I, Doc. 40 at 123:19-125:15.  *See also* Ex. 10, Gulasekaram Decl., at ¶¶ 9(e) ("Federal law does not require that states maintain co-signer requirements for driver's licenses, let alone verify the lawful presence of any adult co-signer."); 55.

In sum, the state cannot assert compliance with the REAL ID Act as its compelling state interest when it has admitted that the policy bears no relation to REAL ID Act requirements, when it would in fact remain compliant with the Act if Plaintiffs receive their requested relief, and when the Court has already rejected Defendant's argument that the interest is narrowly tailored to a compelling state interest.

## IV.    CONCLUSION

Plaintiffs ask the Court to grant their Motion for Summary Judgment on their Equal Protection Clause claim, enter a declaratory judgment that the BMV's policy not to allow parents without lawful immigration status to co-sign a minor child's driver's license/state identification card application violates the Equal Protection Clause of the Fourteenth Amendment, and enjoin the policy.

Respectfully submitted,


By:     */s/ Emily M. Brown*
          Emily M. Brown (0092553)
          Kathleen C. Kersh (0091198)
          Mark R. Heller (0027027)
          Eugenio Mollo, Jr. (0081860)

          Advocates for Basic Legal Equality, Inc.
          130 West Second St., Suite 700E
          Dayton, Ohio 45402
          937-535-4408 (phone)
          937-535-4600 (fax)
          ebrown@ablelaw.org
          kkersh@ablelaw.org
          mheller@ablelaw.org

emollo@ablelaw.org

Caroline Gentry (0066138)
Ana P. Crawford (0090581
David P. Shouvlin (0066154)
Porter Wright Morris & Arthur LLP
One South Main Street, Suite 1600
Dayton, OH 45402
937-449-6748 (phone)
937-449-6820 (fax)

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Plaintiffs' Motion for Summary Judgment was filed electronically October 30, 2019. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's systems.


*s/ Emily M. Brown*
Emily M. Brown (0092553)

*Attorney for Plaintiffs*