# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**INTERCOMMUNITY JUSTICE
AND PEACE CENTER, et al.,**

|  |  |
|---|---|
| **Plaintiffs,** | **Case No. 2:18-cv-1247** |
|  | **JUDGE EDMUND A. SARGUS, JR.** |
| **v.** | **Magistrate Judge Chelsey M. Vascura** |

**REGISTRAR, OHIO BUREAU
OF MOTOR VEHICLES,**

**Defendant.**

## OPINION AND ORDER

This matter is before the Court on the Supplemental Motion for Class Certification filed by Plaintiffs Intercommunity Justice and Peace Center ("IJPC"), Erlin Lorena Rodriguez Enamorado, individually and as next of friend of J.G.R., Maria Monjaraz, individually and as next of friend of A.M., and Maria Cabrera, individually and as next of friend of K.I.A (collectively "Plaintiffs"). (ECF No. 43.) Defendant Charles L. Norman,[1] Registrar ("Registrar" or "Defendant") of the Ohio Bureau of Vehicles ("BMV") has waived opposition to this motion. (ECF No. 54.) For the following reasons, the Plaintiffs' Supplemental Motion for Class Certification (ECF No. 43) is **GRANTED**.

Additionally, this matter is before the Court on Plaintiffs' Motion for Summary Judgment. (ECF No. 56.) Defendant has responded and Plaintiffs have replied. (ECF Nos. 57, 58.) Thus, the motion is ripe for review. For the following reasons, Plaintiffs' Motion for Summary Judgment (ECF No. 56) is **GRANTED**.

---

[1] This case originally named Don Petit, the Registrar of the BMV on December 4, 2018, when the case was filed. (*See Am. Compl.*; Stip. Facts ¶ 5.) Charles L. Norman took office on January 28, 2019, as the new Registrar and, as such, became the defendant in this case. *See https://bmv.ohio.gov/about-registrar.aspx.*

## I.

In this action, a putative class of 16- and 17-year old Ohio residents, most of whom were born in the United States and are citizens, allege that a policy of the BMV Registrar denies them drivers' licenses and/or state identification cards based upon the immigration status of their parents. (*See* Pls.' Mot. Summ. J. at 3, ECF No. 56.) Plaintiffs' posit:

> Obtaining a temporary instruction permit at age 15 and then a driver's license at age 16 is a familiar rite of passage for teenagers across Ohio. It is also a step to gaining independence, supporting oneself and assisting one's family financially, and attending school and extracurricular activities. However, thousands of non-citizen and U.S.-citizen minors across Ohio who are otherwise eligible to obtain these licenses are unable to do so because of the national origin and immigration status of their parents.
>
> The BMV has enacted a discriminatory policy that requires a parent or guardian to prove lawful immigration status in order to co-sign for the minor child if the parent is not a U.S. citizen. When a parent or legal guardian cannot provide such documentation, BMV policy prohibits any other adult from serving as a co-signer. This policy denies or delays the issuance of driver's licenses and identification cards to otherwise-eligible individuals solely on the basis of a minor's parents' alienage and national origin and, consequently, violates those minors' right to equal protection of the laws. Plaintiffs and putative class members seek injunctive and declaratory relief against Defendant and the cessation of this discriminatory policy.

(*Id.* at 3.)

Plaintiffs assert claims under 42 U.S.C. § 1983 for violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. (Am. Compl. ¶¶ 111–20, ECF No. 11.)

### A.    Relevant Statutes, Regulations, and Policies

Section 4507 of the Ohio Revised Code establishes the requirements for the issuance of driver's licenses to Ohio residents. Ohio requires a driver's license applicant to be eighteen years of age or older, except that a person who is at least sixteen years of age and has held a temporary instruction permit identification card for a period of at least six months may apply for and receive

2

a probationary license.  OHIO REV. CODE § 4507.071(A).  Pursuant to BMV regulations, all applicants for a license or a temporary permit must present documents sufficient to show five elements: the person's "(1) [f]ull legal name; (2) [d]ate of birth; (3) [s]ocial security number; (4) [s]treet address of the person's principal residence in the state of Ohio; and (5) [s]tatus as a citizen, permanent resident, or temporary resident of the United States."  OHIO ADMIN. CODE § 4501-1-1-21(C).  These are the same five requirements of the REAL ID Act, a federal statute that sets minimum standards for state driver's licenses and identification cards to be accepted for official purposes.[2]  Pub. L. No. 109-13 § 202(c)(2)(B); 119 Stat. 313; (49 U.S.C. § 30301 codified as note); 6 C.F.R. § 37.11.

To show the fifth element, commonly referred to by the BMV as "legal presence," applicants must establish legal presence in the United States by submitting "original and valid" United States Citizenship and Immigration Services ("USCIS") documents "showing the dates of legal presence."  OHIO ADMIN. CODE § 4501:1-1-21(G)(6).  The acceptable identification documents the Ohio Administrative Code requires are the same for a temporary instruction permit as for a driver's license.  *See id.* § 4501:1-1-21(A).

The issue at the heart of this lawsuit is embodied in Section 4507.07(A) of the Ohio Revised Code, which provides that for any minor under eighteen years of age to receive a probationary license, the minor's application must be "signed by one of the minor's parents, the minor's guardian, another person having custody of the applicant, or, if there is no parent or guardian, a responsible person who is willing to assume the obligation imposed under this section"  (the

---

[2] The REAL ID Act is a portion of the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108–458, 118 Stat. 3638. Ohio, along with at least 24 other states and the District of Columbia, has agreed to comply with the REAL ID Act of 2005.  (Stip. Facts ¶ 6.)

3

"Policy").[3]   OHIO REV. CODE § 4507.07(A).   The co-signer "shall present identification establishing that the adult is the individual whose signature appears on the application." *Id.* The Revised Code further provides that "the [BMV] registrar shall prescribe, by rule, the types of identification that are suitable for" this purpose.  *Id.*  Co-signers are required by regulation to present this identification when co-signing an application for either a temporary instruction permit or a driver's license.  *See* OHIO ADMIN. CODE § 4501:1-1-19(C).

The Revised Code and the Administrative Code are silent on the question of what documents a co-signer (as opposed to an applicant) must present to the Deputy Registrar in order to "establish[] that the adult is the individual whose signature appears on the application." OHIO REV. CODE § 4507.07(A).   The BMV Deputy Registrar Procedure Manual ("DRPM") has implemented a policy in this regard, requiring that a co-signer "present proof of identity by presenting an Ohio credential or proof of the five elements." (Deputy Registrar Procedure Manual at 5–8, ECF No. 23-1, hereinafter "DRPM"; Casper Dep. 75:1–13, 139:16–23, ECF No. 40.) The five elements from the Ohio Administrative Code and the REAL ID Act are set forth above, the fifth of which is the "legal presence" element.  OHIO ADMIN. CODE § 4501-1-1-21(C).  If the co-signer is not an Ohio resident, an "out-of-state credential and proof of a [social security number] is acceptable as proof of identity." (DRPM at 5–8; Casper Dep. 75:1–13, 139:16–23.)

The Revised Code and Administrative Code are also silent on the question of when Deputy Registrars may consider there to be "no parent or guardian," and thus allow another "responsible person" to co-sign. OHIO REV. CODE § 4507.07(A). The BMV has interpreted the policy to allow only a parent or legal guardian to be the co-signer unless the minor is emancipated. (Driver Manual

---

[3] Federal law does not require states to maintain co-signer requirements for driver's licenses. (Expert Report & Decl. Pratheepan Gulasekaram, at 3; Casper Dep. 76:11–14.) Thus, the REAL ID Act is not the basis for the BMV's requirement that co-signers present documents showing legal presence. (Casper Dep. 76:19–22.)

4

at 7, ECF No. 23-2 ("A co-signer must be asked if he or she is a legal parent or guardian of the applicant but is not required to provide documentation proving the relationship or guardianship.").)

Ohio Revised Code §§ 4507.50 and 4507.51 govern the issuance of state identification cards. An identification card is not valid for the purpose of operating a motor vehicle, and there is no age requirement to obtain one. *Id.* § 4507.52(A). The Revised Code requires that, like a temporary instruction permit or a driver's license application, a minor applicant for an identification card have a co-signer. *Id.* § 4507.51(A)(1); *see also* Driver Manual at 6 ("Co-signer Requirements for all types of Ohio Credentials"). Plaintiffs aver that, "[a]lthough the BMV policy regarding required USCIS documents for non-citizen co-signers is laid out only in the Driver Manual, in a letter to Plaintiffs' counsel dated October 2, 2017, Defendant stated: 'the BMV applies the same identification requirements to Ohio driver's licenses, commercial driver's licenses, temporary instruction permits, and state identification [] cards . . . .'" (Am. Compl. ¶ 45, Ex. 3.) Defendant agrees that the BMV policy requires the same identification to obtain a state identification card as is required to obtain a driver's permit. Therefore, the Policy applies to minors who apply for state identification cards and to those who apply for driver's licenses.

Defendant has stipulated that if the allegations in the Amended Complaint are true, under current BMV policy minor Plaintiffs K.I.A., A.M., and J.G.R. all meet the BMV's "legal presence" requirement. (Statement of Stipulated Facts ¶ 12, ECF No. 23, hereinafter "Stip. Facts.") With that stipulation, the parties agree that each minor Plaintiff's only obstacle to obtaining a temporary instruction permit, driver's license, or state identification card, is an inability to obtain a policy-eligible co-signer.[4]

---

[4] Liability insurance, which every Ohio driver is required to have, is not an issue in this case. OHIO REV. CODE § 4509.01(A).

5

**B.     Relevant Facts**

Plaintiffs include: (1) K.I.A., A.M., and J.G.R., Ohio residents who by virtue of their ages (16 and 17) are eligible to apply for a temporary permit identification card and, after satisfying driver's education requirements and passing a driving test, a driver's license; (2) the three sole custodial parents of each of the three minors, who by virtue of their immigration status cannot co-sign for their children's driver's license applications; and (3) organizational plaintiff IJCP, a Cincinnati-based nonprofit organization with a mission of promoting immigrant rights, developing leadership ability in its members (who include immigrant youth and the U.S.-citizen children of immigrants), and counteracting discrimination against its members. (Am. Compl. ¶¶ 6–16.)

**1.   Plaintiff A.M.**

A.M. is a citizen of the United States who lives in Toledo, Ohio, and attends the Maritime Academy of Toledo. (Monjaraz Decl. ¶ 2–3, ECF No. 56-2.) Ms. Monjaraz lives in Toledo, Ohio and is a citizen of Mexico. (*Id.* ¶ 1.) Ms. Monjaraz is the sole custodial parent of A.M. (*Id.* ¶¶ 2, 3.) In April of 2017, when A.M. was fifteen and a half years old, Ms. Monjaraz accompanied A.M. to the BMV in Oregon, Ohio to apply for a temporary driver's permit. (*Id.* ¶ 5.) Ms. Monjaraz, intending to be her son's co-signer, provided her valid Mexican passport and her valid Mexican consular identification card. (*Id.* ¶ 7.) The Deputy Registrar denied A.M. a temporary permit because Ms. Monjaraz did not have proof of legal presence. (*Id.* ¶ 8.)

Next, Ms. Monjaraz's friend, Jacquelin Ocampo, a United States citizen, accompanied A.M. to the Deputy Registrar's office intending to be A.M.'s co-signer. (*Id.* ¶ 9.) The Deputy Register again refused to give A.M. a temporary permit because Ms. Ocampo was not A.M.'s parent or legal guardian. (*Id.*)

6

A.M. was 17 years old at the time of filing this lawsuit and the motion for class certification but has since turned 18 years old. (Pls.' Mot. Summ. J. at 4 n.1.) A.M. is now eligible to get a driver's license without a co-signer. (*Id.*)

### 2. Plaintiff K.I.A.

K.I.A is a citizen of the United States who lives in Cincinnati, Ohio and attends Roger Bacon High School. (Cabrera Decl. ¶ 5–6, ECF No. 56-5.) Ms. Cabrera lives in Cincinnati, Ohio and is a citizen of Mexico. (*Id* ¶ 1.) She has three children, her youngest K.I.A is a citizen of the United States. (*Id.* ¶ 3.) Ms. Cabrera's oldest daughter, Esther, applied for a driver's license in Sharonville, Ohio, when she was 16 years old. (*Id.* ¶ 7.) The Deputy Registrar would not allow Esther to obtain a license because Ms. Cabrera, Esther's intended co-signer, could not provide documentation showing legal presence. (*Id.* ¶ 8.) Ms. Cabrera had provided her Mexican consular identification card and a valid Mexican passport. (*Id.*) K.I.A. did not attempt to obtain a driver's license because she knew her mother would not be able to be her co-signer, and thus, she would not be able to obtain a license. (*Id.* ¶¶ 10–11.)

### 3. Plaintiff J.G.R.

J.G.R. is a citizen of Honduras who lives in Columbus, Ohio and attends Independence High School. (Enamorado Decl. ¶ 2–3, ECF No. 56-3.) J.G.R. has Special Immigrant Juvenile Status. (*Id.* ¶ 5; Rodriguez Decl. ¶ 2–3, ECF No. 56-4.) As such, she is currently awaiting the availability of a visa in order to adjust her status. (*Id.*); 8 U.S.C. § 1153(b)(4) (describing availability of immigrant visas for special immigrants). Pursuant to BMV policy and federal law, J.G.R. has the requisite immigration documentation to obtain an Ohio driver's license or state identification card. (Stip. Facts ¶ 9.)

Ms. Enamorado, J.G.R.'s mother, lives in Columbus, Ohio and is a citizen of Honduras. (Enamorado Decl. ¶ 1.) J.G.R.'s father's whereabouts are unknown, but as far as Ms. Enamorado is aware he does not have any immigration status in the United States. (*Id.* ¶ 4.) In early fall or winter of 2017, Ms. Enamorado accompanied J.G.R. to the BMV on East Broad Street in Columbus, Ohio. (*Id.* ¶ 6; Rodriguez Decl. ¶ 6.) Ms. Enamorado intended to be J.G.R.'s co-signer. (*Id.*) Ms. Enamorado presented her Honduran passport. (*Id.* ¶ 7; Rodriguez Decl. ¶ 7.) The Deputy Registrar refused to approve J.G.R.'s application for an Ohio identification card because Ms. Enamorado could not present proof of legal presence. (*Id.*)

One week later, J.G.R. returned to the BMV with Jorge Pagon, a United States citizen and friend of their family who was willing to be her co-signor. (*Id.* ¶ 9; Rodriguez Decl. ¶ 9.) The Deputy Registrar told J.G.R. that only parents of legal-guardians can so-sign a minor's application and refused to issue her a state identification card. (*Id.* ¶¶ 9–10; Rodriguez Decl. ¶ 9.)

J.G.R. was a minor at the time of filing this lawsuit and moving for class certification but has since turned 18 years old. (Pls.' Mot. Summ. J. at 4 n.1.) J.G.R. is now eligible to get a driver's license without a co-signer. (*Id.*)

### 4. Plaintiff Intercommunity Justice and Peace Center

The IJPC is a non-profit organization that educates and advocates for many causes, including immigration. (Reynolds-Berry Decl. ¶¶ 1, 4, ECF No. 56-6.) In 2016, IJPC began hearing from its members that they were being denied driver's licenses by the BMV because of their parents' inability to serve as co-signers. (*Id.* ¶ 9; Searls Decl. ¶ 13, ECF No. 56-7.) Due to the BMV's policy, IJPC has spent its resources transporting members to and from its meetings and events. (*Id.* at ¶¶ 11–12; *see also* IJPC Mileage Reimbursement Forms, ECF No. 56-8.) Many of the IJPC's members are afraid to come forward on the issue underlying this lawsuit because they

fear retaliation against their families. (*Id.* ¶ 14.) The IJPC asserts that it has a duty to represent its members in this lawsuit as it affects the organization directly as well as its members. (*Id.*)

### 5.    Procedural History

In October of 2018, Plaintiffs brought suit under Section 1983 alleging a violation of their Fourteenth Amendment rights to equal protection. In December of 2018, Plaintiffs moved for class certification which was stayed pending discovery. (ECF Nos. 15, 22.) In February of 2019, Defendants moved to dismiss Plaintiffs' claims. (ECF No. 25.) The Court denied this motion. (ECF No. 49.) Plaintiffs then filed a supplemental motion for class certification, as well as a motion for summary judgment, both of which are pending before the Court. (ECF Nos. 43, 56.)

### II.

Federal Rule of Civil Procedure 23 controls certification of class actions. The party seeking class certification bears the burden of proof. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Although Rule 23(a) requirements are procedural, not jurisdictional, in nature, a party must satisfy the requisite criteria before class certification can be granted. *See D. D. v. Washington Cty.*, No. 2:10-cv-1097, 2011 U.S. Dist. LEXIS 27720, at *1 (S.D. Ohio Mar. 3, 2011). Courts must use the four factors in Rule 23 when analyzing any request to certify a class. *See, e.g., EEOC v. Whirlpool Corp., Local 808*, 80 F.R.D. 10, 14 (N.D. Ind. 1978) ("The Rule 23 prerequisites are mandatory."). Put simply, parties cannot consent to Rule 23 certification. *Washington Cty.*, 2011 U.S. Dist. LEXIS 27720, at *1. Rather, a district court may certify the proposed class only if it concludes, based on the record before it, that the four factors stated in Rule 23 are satisfied.

Rule 23(a) states:

> [o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  These four requirements are commonly referred to as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  *See Washington Cty*, 2011 U.S. Dist. LEXIS 27720 at *4.

The district court must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are satisfied before certifying a class. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982).  While the district court has broad discretion on whether to certify a class, the determination must be made within the confines of Rule 23. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981) (finding the district court bound by the Federal Rules).  A class is not maintainable as a class action merely because it is designated as such in the pleadings. *Am. Med. Sys.*, 75 F.3d at 1079 (citing *Cash v. Swifton Land Corp.*, 434 F.2d 569, 571 (6th Cir. 1970)).  The Sixth Circuit has stated:

> Mere repetition of the language of Rule 23(a) is not sufficient.  There must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled.  Maintainability may be determined by the court on the basis of the pleadings, if sufficient facts are set forth, but ordinarily the determination should be predicated on more information than the pleadings will provide.

*Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974) (citation omitted).

The district court, however, is not permitted to inquire into a case's merits at the class certification stage. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974). ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.  Indeed, such a procedure contravenes the Rule.").  Thus, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015) (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 586 U.S. 455,

466 (2013)) (internal quotations omitted); *see also In re Whirlpool Corp. Front Loading Washer Prods. Liability Litig.*, 722 F.3d 838, 851–52 (6th Cir. 2012) ("[D]istrict courts may not turn the class certification proceedings into a dress rehearsal for the trial on the merits." (internal quotations omitted)); *Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 417 (6th Cir. 2012) (explaining that although "conformance with Rule 23(a) . . . must be checked through rigorous analysis, . . . it is not always necessary . . . to probe behind the pleadings before coming to rest on the certification question, because sometimes there may be no disputed factual and legal issues that strongly influence the wisdom of class treatment." (internal quotations omitted)).

### III.

Plaintiffs seek to certify the following class: "all 16- and 17-year-olds residing in Ohio who are U.S. citizens or otherwise 'legally present,' and whose parents are non-citizens and do not possess the required USCIS documentation to co-sign the minors' driver's license or state identification card applications." (Suppl. Mot. Class Cert. at 1, ECF No. 43, hereinafter "Mot. Class Cert."). According to Plaintiffs, the Court should certify the proposed class because the class "satisfy[ies] all the prerequisites to class certification under Rule 23(b)(2), namely, numerosity, commonality, typicality, adequacy, and the appropriateness of injunctive and declaratory relief because Defendant has acted or failed to act on grounds generally applicable to the class." (*Id.* at 1–2). Defendant does not oppose class certification. (*See* Def. Waiver Opp'n, ECF No. 54.) The Court, however, is still required to analyze whether class certification is proper under Rule 23. As such, the Court will first address the Rule 23(a) requirements, then will turn to whether the requirements of Rule 23(b)(2) have been satisfied, and then finally the Court will consider the appointment of class counsel.

A.    **Rule 23(a) Requirements**

1.    **Numerosity**

Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no bright line numerical test by which the district court can determine when the numerosity requirement is satisfied. *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 n.24 (6th Cir. 1976) ("Impracticability of joinder is not determined according to a strict numerical test but upon the circumstances surrounding the case.") (citing *Cash*, 434 F.2d at 571). When class size reaches substantial proportions, however, the numerosity requirement is usually satisfied by numbers alone. *Am. Med. Sys.*, 75 F.3d at 1079.

Plaintiffs assert that the putative class meets Rule 23(a)(1)'s numerosity requirement as "there are at least 3,700 members of the proposed class." (Mot. Class Cert. at 6 (citing Boyce Decl. ¶ 4, ECF No. 43-5).) Plaintiffs submitted the Declaration of Dr. Geoffrey Alan Boyce, the Academic Director of the Border Studies Program at Earlham College. (*See generally* Boyce Decl.) Dr. Boyce submits:

1.  Based on my review of the available research, I believe it is reasonable to conclude that there are thousands of 16- and 17-year-old residents of the State of Ohio who are US citizens or who have lawful immigration status, but whose parents lack the required immigration documentation to co-sign for the minor's driver's license or state identification.

                                    * * *

2.  In Ohio, there are approximately 90,000 unauthorized immigrants who reside in the state. It is therefore likely that there are also about 33,600 U.S.-citizen minor children of unauthorized immigrant parents residing in the State of Ohio.

3.  If these U.S.-citizen minor children are distributed evenly by age 0-17, then there would be approximately 3,700 U.S. citizens living in the State of Ohio whose parents are unauthorized immigrants.

4.  Based on the available data, I believe it is reasonable to conclude that, throughout the State of Ohio, there are thousands of U.S. Citizens aged 16 and

17 who are the children of non-citizen parents that do not have the required immigration documentation to co-sign for a driver's license or state identification card.

5. Because the proposed class in this case also includes 16- and 17-year-olds who are not U.S. citizens but are lawfully present and thus eligible for driver's licenses or state identification cards due to lawful immigration status, the approximately 3,700 minors whit undocumented parents is likely a low estimate of the size of the proposed class.

(*Id.* ¶¶ 4, 6–9 (internal citations omitted).) Thus, given the size of the proposed class, the Court is satisfied that joinder of all members is impracticable and that the numerosity requirement is met.

### 2.      Commonality

Under Rule 23, the plaintiff must demonstrate the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). At the certification stage, however, the plaintiffs need not show that all class members have been injured in precisely the same way or were in fact injured at all. *Rikos*, 799 F.3d at 505 ("The Supreme Court in *Dukes* did not hold that named class plaintiffs must prove at the class-certification stage that all or most class members were in fact injured to the meet this requirement."). Instead, "the commonality requirement will be satisfied as long as the members of the class have allegedly been affected by a general policy of the [d]efendant and the general policy is the focus of the litigation." *Bovee v. Coopers & Lyband*, 216 F.R.D. 596, 608 (S.D. Ohio 2003) (citing *Putnam v. Davies*, 169 F.R.D. 89, 93 (S.D. Ohio 1996)).

Additionally, although Rule 23(a)(2) speaks of "questions" in the plural, there need be only one question common to the class. *Id.* (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)). A common question must be one that is "capable of class wide resolution— which means determination of its truth or falsity will resolve an issue that is central to the validity

of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

Plaintiffs posit that there are three questions of law and fact that are common to all in the putative class:

1. [D]oes the Defendant have a policy of not allowing a non-parent or non-guardian to co-sign a minor's driver's license or state identification application where the parent cannot produce the required USCIS documents to show "legal presence;

2. [D]oes such a policy unlawfully discriminate against U.S. citizens and minors with lawful presence on the basis of their parents' national origin in violation of the Equal Protection Clause of the Fourteenth Amendment; and

3. [S]hould such a policy be permanently enjoined by this Court?

(Mot. Class Cert. at 9.)

Plaintiffs submit that *Putnam v. Davis*, 169 F.R.D. 89 (S.D. Ohio 1996), is similar to this Case. In *Putnam*, the class challenged the constitutionality of an Ohio policy that required the seizure of vehicles, which was "routinely and uniformly applied when a driver [was] arrested for a repeat offense of drunk driving." *Id.* at 93–94. The *Putnam* Court found that the class had satisfied the commonality requirement as the challenged statutory procedure was "routinely and uniformly applied" to all class members and "the essential legal questions . . . will not vary among the class members." *Id.* Plaintiffs assert that here too "the named Plaintiffs . . . seek to redress an unconstitutional state policy carried out against themselves and all class members." (Mot. Class Cert. at 10). Furthermore, Plaintiffs contend these common questions are central to the case as a final holding in their favor would resolve the case for all members of the class. (*Id.* (citing *Young*, 693 F.3d at 542).)

As all proposed class members are subjected to the same policy that is uniformly applied, the Court concludes that there are questions of fact and law common to all members of the proposed class. These common issues may also be resolved on a class wide basis in a single stroke.

As Plaintiffs maintain, "a holding that the Defendant's conduct is unconstitutional because it discriminates against a group of minors on the basis of their national origin and their parents' national origin would resolve the case for all class members 'in one stroke.'" (Mot. Class Cert. at 9–10) (citing *Young*, 693 F.3d at 542). Thus, the commonality requirement is satisfied.

### 3. Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claim or defenses of the class." Fed. R. Civ. P. 23(a)(3). A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Am. Med. Sys.*, 75 F.3d at 1082 (citing 1 Newberg on Class Actions § 3-13, at 3-76). Typicality requires that the "representative's interests [are] aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *Id.* Put differently, "as goes the claim of the named plaintiff, so go the claims of the class." *Sprague*, 133 F.3d at 399; *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000). The commonality and typicality requirements are closely related because they both help determine whether the claim of the named plaintiff and those of the class are so interrelated that the interests of the absent class members will be protected. *Id.*

Like the commonality requirement, the named plaintiff's claims do not have to be identical to the claims and defenses of the other members of the putative class or involve the same facts or law, provided there is a common element of fact or law. *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 6007) (citing *Senter*, 532 F.2d at 525 n.31); *Putnam*, 169 F.R.D. at 94.

Organizational plaintiffs with representative standing can establish the typicality requirement if its claims are typical of the class of individuals it represents. *See United Food &*

*Commercial Workers Union Local 751 v. Brown Shoe*, 517 U.S. 544, 549 (1996).

IJPC asserts it has satisfied the typicality requirement because it has representative standing and its claims are typical to that of the class. IJPC asserts it has representative standing because "its members are harmed by the BMV's minor co-signer policy and would be entitled to sue in their own right." (*Id.* at 12) (internal citation omitted) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); Reynolds-Berry Decl. ¶¶ 8–10, 14; Searls Decl. ¶¶ 6, 12–14).) IJPC "is a membership-based organization and . . . many of its young members including K.I.A., have been affected by the BMV's policy." (*Id.* at 13 (citing Reynolds-Berry Decl. ¶¶ 6, 8–10, 14; Searls Decl. ¶¶ 12–13).) Further, K.I.A. is a member of IJPC. (Cabrera Decl. ¶¶ 16–17.) The Court agrees that, based on the unrebutted facts, IJPC has representative standing. Thus, it need only show, like the other named Plaintiffs, its claims are typical to that of the class.

Plaintiffs assert that all the named Plaintiffs' claims "arise from the same unlawful conduct" as the class's claims arise from. (*Id.* at 14). Typical to all plaintiffs includes:

> Defendant's refusal to allow a parent without valid immigration status to co-sign for an eligible minor child's driver's license or state identification card application, or to allow another responsible adult to be a co-signer for such minors, and there is no indication that Defendant's written policy is carried out differently as to different class members. All co-signers for minor applicants are required to prove their legal presence in the United States, and all cosigners must be asked if they are the legal parent or guardian of the minor.

(*Id.*) Additionally, the legal claims that the named Plaintiffs assert arise from same legal theory as the claims the class members have. Thus, all named Plaintiff's claims are typical of the class of individuals it represents.

The Court agrees with Plaintiffs. The named Plaintiff's have satisfied the typicality requirement.

### 4.     Adequacy of Representation

Rule 23(a) permits certification if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is essential to due process because a final judgment in a class action is binding on all class members. *Am Med. Sys.*, 75 F.3d at 1083 (citing *Hansberry v. Lee*, 311 U.S. 32 (1940)). "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Beattie*, 511 F.3d at 562 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997)). The Sixth Circuit has articulated two criteria for determining the adequacy of representation: (1) "[t]he representative must have common interests with unnamed members of the class;" and (2) "it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel." *Senter*, 532 F.2d at 525.

#### i.     Named Representatives' Common Interests

The common interest requirement overlaps with the commonality and typicality requirements and requires that the representatives and "the class members have interests that are not antagonistic to one another." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013) (citing *Vassalle v. Midland Funding LLC*, 708 F.3d 713, 721 (6th Cir. 2013)); *see also Shreve v. Franklin Cty.*, No. 2:10-cv-644, 2010 U.S. Dist. LEXIS 131911, at *42 (S.D. Ohio Dec. 14, 2010) ("A plaintiff may not be an adequate representative if that plaintiff is subject to unique defenses that place him or her in a position that is antagonistic to the interests of the class."). Thus, "the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Dry Max*, 724 F.3d at 721

Plaintiffs submit that they "seek declaratory and injunctive relief to ensure that they can obtain driver's licenses and state identification cards, which will enable them to fully participate

in civic life; transport themselves to school, work, and other obligations; and contribute financially to their families." (Mot. Class Cert. at 15). Further, Plaintiffs maintain that "[t]his request for relief does not create any conflicts between named Plaintiffs and other class members." (*Id.*). Based on this unopposed submission, the Court finds the named Plaintiffs' interests are not adverse to those of the class. The named representatives adequately represent the interests of the class members.

### ii.    Class Counsel's Vigorous Prosecution

To satisfy the second requirement of the adequacy of representation prong, it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel. *Senter*, 532 F.2d at 525 (citing *Gonzales v. Cassidy*, 474 F.2d 67, 73 (5th Cir. 1973)). Plaintiffs therefore must have sufficient financial and personal involvement to encourage them to prosecute the action vigorously, and adequate resources and legal representation to meet the demands of maintaining the action. Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1767 (1986)). Further, class counsel must be qualified, experienced, and generally able to conduct the litigation. *Stout*, 228 F.3d at 717.

Here, Plaintiffs seek to appoint as class counsel: Emily Brown, Kathleen Kersh, Mark Heller, and Eugenio Mollo, Jr. of Advocates for Basic Legal Equality, Inc. and Caroline Gentry, Ana P. Crawford, and David P. Shouvlin of Porter Wright Morris & Arthur LLP. (Mot. Class Cert. at 1–2). According to Plaintiffs, Advocates for Basic Legal Equality, Inc., "is the preeminent nonprofit law firm in Ohio in litigation involving immigrants' civil rights." (*Id.* at 15). Ms. Brown represented immigrants in a previous class action in the Northern District of Ohio. (*Id.*; *see also* Ex. 16, 1–2, 7.) Ms. Brown and Ms. Kersh collectively litigated immigration law and civil rights and employment cases in federal courts for 10 years. (*Id.*) Ms. Brown has clerked for two federal

district judges in Columbus and enjoys a stellar reputation.

Mr. Heller has been practicing law for four decades. (*Id.*; *see also* Ex. 16 at 3–6.) He has focused his practice in poverty law, "primarily representing immigrants in federal litigation." (*Id.*) Additionally, Mr. Heller served as counsel in several class actions and collective actions. (*Id.*) Mr. Mollo, Jr. has practiced immigration law and litigated in federal court for 12 years. (*Id.*; *see also* Ex. 16 at 8–9.)

Ms. Gentry, who is well known to the Court as a skilled professional, has practiced law for over twenty years. (*Id.*; *see also* Ex. 16 at 10.) Ms. Gentry has significant experience in federal court and has served as Chair or Co-Chair of Porter Wright's Class Action Practice Group. (*Id.*) Ms. Crawford has five years of litigation experience, including federal trial work on civil rights issues. (*Id.*; *see also* Ex. 16 at 11.) Finally, Mr. Shouvlin is a most distinguished trial lawyer who has litigated many significant cases and has served on virtually every committee of this district court.

The Court also notes that counsel for Defendant here also displayed a high degree of competence and professionalism.

Based on these statements, the Court concludes that Plaintiffs are adequate class representatives and have vigorously prosecuted the interests of the class through qualified and experienced counsel and will likely continue to do so.

## B.     Rule 23(b) Requirements

In addition to satisfying the prerequisites of Rule 23(a), Plaintiffs must demonstrate that the action falls within one of the subcategories of Rule 23(b). Here, Plaintiffs seek class certification under Rule 23(b)(2), which states, in relevant part:

> A class action may be maintained if Rule 23(a) is satisfied and if: . . . the party opposing the class has acted or refused to act on grounds that apply generally to the

class, so that final injunctive relief or corresponding declaratory relief is appropriate
respecting the class as a whole.

Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or
declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or
declared unlawful only as to all of the class members or as to none of them." *Duke*, 564 U.S.
at 360. A class action under Rule 23(b)(2) is referred to as a "mandatory" class action because
class members do not have an automatic right to notice or a right to opt out of the class. The
defining characteristic of a mandatory class is "the homogeneity of the interests of the members
of the class." *Romberio v. Unumprovident Corp.*, 385 F. App'x 423, 432 (6th Cir. 2009) (quoting
*Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639, 649 (6th Cir. 2006)).

To the extent Plaintiffs allege systemic civil rights violations and solely seek declaratory
and injunctive relief designed to benefit the class as a whole, and do not seek monetary damages,
the Court concludes that Rule 23(b)(2) certification is proper. Plaintiffs allege:

> [A]ll members of the class seek injunctive and declaratory relief from Defendant's
> unlawful and generally applicable custom, policy, or practice of not permitting
> minors with undocumented parents to obtain driver's licenses or state identification
> cards because their parents cannot produce the required USCIS documents to show
> what the BMV characterizes as "legal presence." The named Plaintiffs do not
> contend that they were singled out for unlawful treatment. On the contrary, they
> contend that their treatment is in accordance with an official BMV policy, as is the
> treatment of other class members. The remedy they seek—declaratory and
> injunctive relief to force Defendant to cease its policy of denying licenses and
> identification cards to minors whose parents cannot satisfy the requirement for non-
> citizens to produce USCIS documents showing "legal presence"—would apply to
> and benefit all members of the proposed class.

(Mot. Class Cert. at 17). The Court agrees, Plaintiffs' allegations apply generally to the proposed
class and Plaintiffs have satisfied the requirements of Rule 23(b)(2).

**C.    Appointment of Class Counsel**

Plaintiffs also ask the Court to appoint Emily Brown, Kathleen Kersh, Mark Heller, and

20

Eugenio Mollo, Jr. of Advocates for Basic Legal Equality, Inc. and Caroline Gentry, Ana P. Crawford, and David P. Shouvlin of Porter Wright Morris & Arthur LLP as counsel for Plaintiffs. As already stated in Section III.A.4.ii., *supra*, counsel for Plaintiffs have so far shown competence and vigor in representing the interests of the proposed class and collectively have significant experience in complex litigation, class litigation, and civil rights litigation. Finally, the Court finds that counsel for Plaintiffs have effectively investigated potential claims in this action and have demonstrated that they will commit the necessary resources to representing the class.

In sum, the Court hereby GRANTS the Motion for Class Certification. The class under Rule 23(b)(2) consists of the all 16- and 17-year-olds residing in Ohio who are U.S. citizens or otherwise 'legally present,' and whose parents are non-citizens and do not possess the required USCIS documentation to co-sign the minors' driver's license or state identification card applications. The Court further designates Advocates for Basic Legal Equality, Inc. and Porter Wright Morris & Arthur LLP as class counsel.

### IV.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is

a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (The requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts."). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hamad v. Woodcrest Condo. Ass'n.*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

## V.

Plaintiffs argue "they are entitled to judgment as a matter of law on their claim of relief under the Equal Protection Clause of the Fourteenth Amendment." (Pls.' Mot. Summ. J. at 1.) In response, Defendant argues that two of the Plaintiffs, A.M. and K.G.R., no longer have viable claims against Defendant. (Def.'s Resp. Opp. Pl.'s Mot. Summ. J. at 3–4, ECF No. 57, hereinafter "Def.'s Resp.") In addition, Defendant argues there is a genuine dispute of material fact with respect to: the BMV's compliance with the REAL ID Act, the BMV's authority to enact policies to carry out Ohio's motor vehicle laws, Congress's lack of preemption over the BMV's policy, and Ohio's legitimate state interests to support the Policy. (*See id.* at 5–10.)

The Court will first address Plaintiffs' standing. *See Unan v. Lyon*, 853 F.3d 279, 284 (6th Cir. 2017) ("It is well established that a federal court must determine jurisdictional questions

before proceeding to the merits."). Next, the Court will address whether there is a genuine dispute of material fact as to the Policy violating the Equal Protection Clause.

## A. Case or Controversy

Defendant argues that "Plaintiffs A.M. and J.G.R. no longer have viable claims against" Defendant. (Def.'s Resp. at 3.) Defendant contends that because A.M. and J.G.R have reached majority age and no longer require a co-signer to obtain an Ohio identification card or driver's license, there is no remaining dispute. (*Id.*) Plaintiffs, in their reply, point out that while they believe that the "inherently transitory" exception to mootness applies, "if the Court grants class certification while at least one named Plaintiff's claim remains alive, it need not even reach the question" of mootness. (Pls.' Reply at 4, ECF No. 58.) Plaintiffs' point is well-taken.

"The Supreme Court has made clear that Article III requires 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Unan*, 853 F.3d at 284–85 (citing *Preiser v. Newkirk*, 422 U.S. 395 (1975)). A case becomes moot when the issues are no longer "live" or "the parties lack a legally cognizable interest in the outcome." *Id.* (citing *United States Parole Comm'ns v. Geraghty*, 445 U.S. 388, 396 (1980)).

The "[m]ootness doctrine, however, is flexible in the case of class actions." *Id.* (internal citations omitted); *see also Wilson v. Gordon*, 822 F.3d 934, 941–42 (6th Cir. 2016). Generally, once a class is certified, the mooting of the named Plaintiff's claim will not moot the action. *Id.* Additionally, while generally the mooting of the named Plaintiff's claim prior to class certification moots the entire case, the Sixth Circuit recognizes exceptions including defendants "picking-off" the named plaintiff and claims which are "inherently transitory." *Id.* Importantly, "[i]f the Court determines that any one of the [p]laintiffs has standing, the court ha[s] jurisdiction and may proceed with the case." *Miller v. Blackwell*, 348 F. Supp. 2d 916, 920 (S.D. Ohio 2004); *see also*

*Carey v. Population Servs. Int'l*, 431 U.S. 678, 682 n.2 (2015) (recognizing that where at least one plaintiff has standing, a court need not determine the standing of the other plaintiffs).

The Court need not reach the question of whether the inherently transitory exception applies to A.M. and J.G.R.'s claims. Regardless of whether A.M. ad J.G.R. have viable claims, the parties agree there are two plaintiffs with standing, K.I.A. and IJPC. K.I.A.'s claim remains viable because she is seventeen years old and thus, needs a co-signer to obtain an identification card or driver's license. OHIO REV. CODE § 4507.07(A). IJPC's claims remain viable for it continues to spend resources on transportation for K.I.A., and other class members, who have not yet turned eighteen years old and cannot obtain a driver's license due to the Policy. *Miami Valley Fair Housing Ctr., Inc. v. Connor Grp*, 725 F.3d 571 576 (6th Cir. 2013) ("[A] drain on an organization's resources . . . constitutes a concrete and demonstrable injury for standing purposes."). Thus, because it is undisputed that two plaintiffs have standing, the Court need not reach the question of the standing of the other plaintiffs and the case can proceed. *Miller*, 348 F. Supp. 2d at 920; *Carey*, 431 U.S. at 682 n.2.

In addition, even if K.I.A. or IJPC's claims were to become moot at some point in the future, now that the class has been certified, this will not moot the entire action. *Unan*, 853 F.3d at 284–85; *Wilson*, 822 F.3d at 941–42. Plaintiffs' class action case contains a case or controversy and the thus, the Court may turn to the merits of the motion.

**B. Equal Protection**

The Policy requires a parent or guardian to prove legal presence in the United States in order to co-sign for the minor child. (DRPM 5–8.) Further, when a parent or legal guardian cannot provide such documentation, no other adult may serve as a co-signer. (*Id.*) Plaintiffs contend this policy "facially discriminates against minor applicants for driver's license[s] and state

identification cards on the basis of their parents' alienage's and national origins because it interprets the Ohio Revised Code's cosigner requirement to allow only a parent or legal guardian to cosign a minor's application and requires that parent or legal guardian to have lawful immigration status." (Pls.' Mot. Summ. J. at 13.)

The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike" under the law. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). If a state does not burden a fundamental right or target a suspect classification, the law or policy will withstand constitutional scrutiny so long as it bears a rational relationship to a legitimate state interest. *Vacco v. Quill*, 117 S. Ct. 2293, 2297 (1997). However, if a state law or policy makes a classification based on race, national origin, or alienage, such law violates the Equal Protection Clause unless the state can demonstrate that the policy is "necessary to further a compelling governmental interest" and "narrowly tailored to that end." *Fisher v. Univ. of Tex. at Austin*, 133 S. Ct. 2411, 2422 (2013) (internal quotations omitted).

### 1. Fundamental Right or Suspect Class

Plaintiffs argue that the Policy, as written, makes a classification on the basis of alienage and national origin, a suspect class, and accordingly, that strict scrutiny applies. (Pls.' Mot. Summ. J. at 14.) Defendant does not directly contest this in his response. [5] Instead, Defendant provides a series of arguments as to its authority to enact the Policy and the reason the Policy is necessary.

---

[5] In one section labeled "[t]he BMV has the power to interpret statutes and adopt necessary requirements to effectuate its mission" Defendant briefly mentions a rational basis. (Def.'s Resp. at 9–10.) Defendant provides no argument, however, as to why rational basis should apply, and instead only provides interests which he contends are "legitimate." (*Id.*) This section contains no facts which the Court could construe as creating a genuine issue of material fact as to the level of scrutiny to be applied.

The facts are not in dispute.  Defendant provides nothing obtained through discovery that changes the facts the Court relied on when Defendant filed its motion to dismiss.[6]  Thus, the Court comes to the same conclusion it did at the motion to dismiss stage:

> The Registrar's policy, which denies minors' licenses and state identification cards when their parents cannot serve as co-signers because they cannot present documents evincing their lawful immigration status and prevents any other adult from serving as co-signer if the parent cannot do so, is a suspect classification that targets only those minors whose parents lack lawful status.  It creates a distinction between American citizens who are Ohio minors with parents having lawful immigration status and those who do not, even though both groups are otherwise eligible for driver's licenses and state identification cards under Ohio state law and the REAL ID Act.  As such . . . the BMV policy discriminates against the American citizen and non-citizen minors across Ohio who are otherwise eligible to obtain the driver's licenses and/or state identification cards and are unable to do so because of the national origin and immigration status of their parents.  Therefore, Defendant is required to show that the policy is "necessary to further a compelling governmental interest and narrowly tailored to that end." *Fisher*, 133 S. Ct. at 2422.

(Opinion & Order on Def.'s Mot. Dismiss at 17, ECF No. 49.)

### 2.  Necessary to Further a Compelling Government Interest and Narrowly Tailored to that End

Defendant provides three interests which it characterizes as "legitimate" state interests. (*See* Def.'s Resp. at 9–10.)  First, Defendant argues the BMV is complying with the REAL ID Act. (*Id.* at 5.)  Second, Defendant argues the state has a legitimate interest in verifying the co-signer's identity in order to "effectuate policies that protect other Ohio drivers from minor drivers." (*Id.* at 10.)  Defendant asserts that "[s]tate-issued driver's licenses or ID cards are the primary form of identification for most individuals and, consequently, the state has legitimate interest in verifying

---

[6] Defendant argues that A.M., J.G.R., and K.I.A. were improperly denied the chance to get driver's licenses and identification cards when accompanied by a co-signer who was not their parent or legal guardian. (Def.'s Resp. at 7.) Defendant contends the Policy allows for a co-signer who is not the minor's parent or legal guardian as long as they have the required documents. (*Id.*)  In support, Defendant attaches to his response a BMV customer service assistant's affidavit, stating the Policy was wrongfully applied in Plaintiffs' situations. (Casper Aff. ¶ 2, ECF 57-1.)  The Driver Manual indicates the Policy was not wrongfully applied. (*See* Driver Manual at 7.)  Even assuming it was, however, the Policy still treats those with parents who cannot show legal presence different than those with parents who can.  It requires a minor with parents who cannot show legal presence to take the additional step of finding a co-signer who can show legal presence.  This argument, thus, is not persuasive.

that information." (*Id.*)    Third, Defendant argues it has a legitimate interest "in consistent requirements for all forms of licenses." (*Id.*)

Plaintiffs first note that in the Federal Rule of Civil Procedure 30(b)(6) deposition, Defendant could not provide any reason why the Policy was implemented. Defendant was asked "do you know why there is a requirement for a co-signer to show proof of legal presence?" (Casper Dep. 222:7–9.) Defendant responded, "I do not." (*Id.* at 222:10.) Defendant was then asked, "has anyone at the BMV you [have] talked to articulated why [the policy] is necessary?" (*Id.* at 222:11–13.)  Defendant responded, "[n]o." (*Id.* at 222: 14.)  Finally, Plaintiffs' counsel questioned "nobody that you[] talked to at the BMV about this issue in preparation for today could tell you what the reason for having that policy was?" (*Id.* at 223:16–19.)  Defendant stated, "[t]hat [is] correct." (*Id.* at 223:20.)

Plaintiffs argue that the Rule 30(b)(6) deposition testimony represents the BMV's position on noticed topics. (Pls.' Mot. Summ. J. at 16 (citing *United States ex rel. Frye v. Health Alliance of Greater Cincinnati*, No. 1:03-cv-167, 2009 U.S. Dist. LEXIS 122533, at *5 (S.D. Ohio Nov. 20, 2009)).)  Plaintiffs contend that "the BMV cannot invent a purpose during litigation that its own Rule 30(b)(6) designee did not raise in deposition." (*Id.* at 17.)

Plaintiffs' argument is persuasive.  Additionally, even upon examining the purposes of the policy Defendant provided in his response, none of them is compelling and narrowly tailored.

### a.  Compliance with the REAL ID Act

Plaintiffs argue that the purported interest of complying with the REAL ID Act, even if true, is not compelling.  Plaintiffs point out that Defendant, in the Rule 30(b)(6) deposition, acknowledged that "the REAL ID Act itself does [not] contain anything about co-signer

requirements for minors," and "[t]he REAL ID Act is [not] the basis for the BMV's requirements that co-signers present certain legal presence documents." (Casper Dep. 76:11–14, 19–22.)

The Court agrees with Plaintiffs. There is no genuine dispute of material fact, based on the record evidence, that compliance with the REAL ID Act is not the BMV's interest behind the Policy. The BMV acknowledges this in its Rule 30(b)(6) deposition. (*Id.* 76:11–14, 19–22.) Defendant's bare assertions in the response cannot overcome the record evidence.

Further, even if this was the interest behind the Policy, it is not compelling. The REAL ID Act does not require the Policy. The REAL ID Act does require applicants for driver's licenses to show certain documents evidencing a legal presence. Pub. L. No. 109-13 § 202(a); 119 Stat. 313; (49 U.S.C. § 30301 codified as note); 6 C.F.R. § 37.11. As Defendant acknowledged, the REAL ID Act does not, however, impose requirements for co-signers of a driver's license application. (Casper Dep. 76:11–14.) Ohio would remain compliant with the REAL ID Act even if it terminated the Policy and allowed parents and legal guardians to co-sign for minors without documents showing legal presence. Thus, Defendant's assertion that the REAL ID Act is the interest behind the Policy, does not raise a genuine issue of material fact as to whether this policy violates the Equal Protection Clause.

### b. Co-signers' Liability for Damage Caused by Minors

Plaintiffs argue Defendant's purported interest in verifying co-signers identities for liability purposes is not compelling. (Pls.' Mot. Summ. J. at 18–19.) First, minors applying for driver's licenses are required to sign a form attesting that they have financial responsibility. (*Id.* at Exs. 13, 14; Casper Dep. 229:12–14, 230:7–9.) A minor can show financial responsibility by showing he or she has minimum liability coverage for accidents. (*Id.* at 231:6–10.) Co-signers, on the other hand, are not required to sign this form attesting to financial responsibility. (*Id.* at 231:15–17.)

Further, Plaintiffs argue, Defendant could not point to any instance where a co-signer had been held liable for damage a minor caused a third party. (*Id.* at 240:11–16.) Plaintiffs also provided testimony from their expert who pointed to several other states who have similar co-signer requirements but allow co-signers to show various forms of identity not necessarily indicative of legal presence. (Gulasekaram Decl. ¶ 56, ECF 56-10.)

Additionally, Plaintiffs argue that even if Defendant's interest in verifying co-signers' identities is compelling, it is not narrowly tailored. First, a co-signer could present other forms of identification, such as a valid foreign passport or valid consular identity card, and the BMV could identify them. Second, a co-signer can assume liability for the minor regardless of their immigration status because people without lawful immigration statuses are not prohibited by law from purchasing car insurance. (Pls.' Mot. Summ. J. at 19.) Plaintiffs' points are well taken.

Importantly, the Court stated in its order denying Defendant's motion to dismiss that the Policy was not narrowly tailored to an interest in verifying co-signers' identities for liability of damage caused by the minor. (*See* Opinion and Order on Def.'s Mot. Dismiss at 18–20.) Here, at the motion for summary judgment stage, Defendant has provided no record evidence which would tend to show otherwise. In contrast, Plaintiff has provided record evidence to support the court's earlier decision.

Plaintiff provided evidence showing this interest is not compelling because the Policy requires minors to attest to financial responsibility, but not co-signers. Plaintiffs also showed Defendant could not point to an instance where a co-signer was held liable for damage a minor caused a third party. Additionally, Plaintiffs have provided evidence to show this interest is not narrowly tailored. Plaintiffs' expert stated that this interest could be supported by requiring co-signers to show various other forms of identity. (Gulasekaram Decl. ¶ 56.) Plaintiffs' expert stated

other states have co-signer requirements and allow alternate forms of identity for identification purposes. (*Id.*) The Court finds there is no genuine issue of material fact that an interest in verifying co-signers' identifies is not compelling or narrowly tailored.

### c. Consistent Requirements for All Licenses

Plaintiffs argue that Defendant's stated purpose of consistency in the requirements for different types of licenses is not compelling. Plaintiffs point out that the DRPM "is replete with examples of different requirements for cosigners and applicants." (Pls.' Mot. Summ. J. at 20; (citing *see* Casper Dep. 77:22–79:5).) Plaintiffs point to the different required documentation for different types of licenses including the standard and compliant licenses, licenses for naturalized United States citizens and licenses for United States born citizens, and commercial driver's licenses and Class D licenses. (Pls.' Reply at 6, n.3 (citing DRPM; Driver Manual).) Plaintiffs also assert "[i]f anything, [the policy] creates *inconsistency* because certain minors are deemed ineligible for licenses based solely on their parents' immigration status." (Pls.' Reply at 6.) Plaintiffs arguments are well-taken. There is no genuine dispute of fact that this purpose is not compelling.

### d. Defendant's Additional Arguments

In addition to arguing the Policy is supported by three legitimate interests, Defendant makes a series of additional arguments. Defendant argues that the BMV has the authority to enact policies that are necessary to carry out Ohio's motor vehicle laws. (Def.'s Resp. at 6.) In support of this argument, Defendant explains how the Ohio Revised Code requires a co-signer and that such co-signer establish that he or she is the adult whose signature appears on the application. (*Id.* (citing OHIO REV CODE §§ 4501.02, 4507.07(A)).) Similarly, Defendant argues it has the power to interpret statutes and adopt requirements to effectuate their missions. (*Id.* at 9–10.)

Plaintiffs do not dispute these contentions. Plaintiffs provide that they "do not contend that the BMV lacks authority to determine certain documentation requirements for driver's license applicants . . . the BMV simply may not do so in a discriminatory manner by targeting a suspect class of U.S.-citizens and other lawfully present minors on the basis of their parents' alienage and national origin." (Pls.' Reply at 7.) This Court agrees. The Court is not holding that Defendant lacks authority to enact rules in accordance with Ohio's statutory grants of authority. Defendant simply may not enact policies which violate the Federal Constitution.

Additionally, Defendant argues this policy is not preempted by federal law. (Def.'s Resp. at 7–8.) Plaintiff responds that they have not asserted a claim for relief under the Supremacy Clause. (Pls.' Reply at 5 n.2.) The issue with the Policy is not that it is preempted by federal law. The policy violates the Equal Protection Clause.

In sum, the additional arguments Defendant provides do not create a genuine issue of material fact. Thus, the Court finds that as a matter of law Defendant's policy violates the Equal Protection Clause.

## VI.

For the reasons set forth above, Plaintiffs' Supplemental Motion for Class Certification (ECF No. 43) is **GRANTED**. Additionally, Plaintiffs' Motion for Summary Judgment (ECF No. 56) is **GRANTED**. The Clerk is **DIRECTED** to enter judgment and close this case.

**IT IS SO ORDERED.**

2-20-2020

**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**